(83 App. Div. 287.)

## BARNEY v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. May 8, 1903.)

1. TEMPORARY INJUNCTION—RAPID TRANSIT TUNNEL—CONSTRUCTION.

A temporary injunction restraining work on the rapid transit tunnel because, without consent of abutting owners, it is being constructed nearer the side of the street than authorized by the court, is properly refused, not being asked for till practically all the excavating has been done, at a cost of $400,000, and the mere stopping of the work, leaving the excavation open, being of no advantage to the abutting owners, while the necessity of the public for additional means of transportation demands that there be no delay.

Appeal from Special Term, New York County.

Action by Charles T. Barney against the city of New York and others. From an order (80 N. Y. Supp. 972) denying a motion for a preliminary injunction, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

Arthur H. Masten, for appellant.
Theodore Connoly, for respondent city of New York.
Edward M. Shepard, for respondent Rapid Transit Board.
De Lancey Nicoll, for respondent John B. McDonald.

INGRAHAM, J. This appeal is from an order of the Special Term denying a motion for an injunction restraining the defendants from further excavating, blasting, or constructing the rapid transit tunnel for the underground railroad under Park avenue adjacent to the plaintiff's premises, or from continuing the work of tunnel construction in such a manner that the easterly side of the tunnel or of the excavation therefor shall be nearer to the building or house line than the tunnel described and shown in the routes and general plan adopted and approved by the defendants the rapid transit railroad commissioners. The plaintiff is the owner of a dwelling house on the east side of Park avenue at the corner of Thirty-Eighth street. In pursuance of legislative authority and the consent of the city of New York, the rapid transit commissioners prepared a general plan for the construction of an underground railroad in the city of New York. That general plan was approved by the municipal authorities, but, the property owners having refused to consent to the construction of the road, application was made to this court for authority to construct and operate the said road notwithstanding such refusal. The plans, as prepared by the rapid transit commissioners, and which were submitted to this court for approval, contemplated three separate tunnels under Park avenue in front of the plaintiff's premises, the easterly side of the easterly tunnel being 37 feet and 6 inches from the building

¶ 1. See Injunction, vol. 27, Cent. Dig. §§ 20, 22, 23, 307.

line of the property on the east side of Park avenue. The center tunnel was 24 feet in width, and constructed in the middle of the avenue, and was separated from the east tunnel by a masonry wall. The center tunnel was to contain two tracks, while the easterly tunnel was to contain one track, and it was this method of construction that was approved by this court. After such approval, the commissioners of rapid transit made the detailed plans necessary for a contract to construct the road. Upon a further consideration, the original plans were modified by substituting for the three tunnels originally proposed two tunnels, one upon the east and the other upon the west side of Park avenue, the east side tunnel being 35 feet from the building line of the abutting property on the easterly side of Park avenue. The contract was made between the commissioners of rapid transit and the defendant McDonald for the construction of the road according to these modified plans. Subsequent to the execution of this contract, a further modification of these plans was considered necessary by the chief engineer in charge of the work, and such modification was directed by him without any formal action of the rapid transit board, and without the consent of either the property owners or of this court. By this modification the easterly tunnel was located on the east side of Park avenue about seven feet from the building line of the property. The construction of this easterly tunnel was prosecuted under the authority of the chief engineer of the board of rapid transit commissioners, with the approval of the engineer of the contractors, but without other authority. After the excavation was substantially completed, at a cost to the city of New York of upwards of $400,-000, this action was commenced to enjoin the further construction of this tunnel under Park avenue, and to compel the defendants to fill up the excavation already made, and to proceed with the plans as originally proposed.

The evidence is that it would cost the city of New York, to comply with this demand, in the neighborhood of $500,000 in addition to the money already spent, and would delay the completion of the work for about 18 months; and the question that was presented to the court below was whether, in view of these facts, in the exercise of its judicial discretion, this work should now be stopped, entailing upon the public and the city this delay in the prosecution of the work, with the large additional cost indicated. It is undoubtedly true that this modification of the plans materially changing the relation of the proposed road to the abutting property without the consent of the property owners, or, in lieu thereof, the approval of this court, was entirely unauthorized. The constitutional provision, recognized and enforced by the statutes under which this road is being constructed, by which this railroad could not be built without the consent of the property owners, or, in lieu thereof, the approval of this court, provided safeguards for the protection of property abutting upon a street through or under which it was proposed to construct a railroad. Before such a road should be constructed, the abutting owners were to be consulted; but, in order to prevent the opposition of the property owners from preventing a necessary public improvement, provision was made by which an approval by this court for the con-

struction of such a railroad could take the place of the consent of the property owners; but that was only to be done where notice to the property owners was given, so that they could be heard in opposition to the construction of the road; and the application to this court for its approval was necessarily based upon the plans for the construction and location of the proposed road, so that the property owners could have an opportunity of presenting their objections to the road as it was proposed to be constructed and located. Before a tunnel within seven feet of the property was authorized, the abutting owners had the right to be heard and present their objection to a tunnel so located.

We will assume, therefore, in the disposition of this application, that the change of location was unauthorized, and if, before any work had been done, or substantial progress had been made in the excavation, an application had been made for an injunction, that the court would have been justified in restraining the further prosecution of the work until the necessary consents had been obtained. An entirely different question is presented where the application for an injunction is made after the excavation of the tunnel has been substantially completed, and where all that remains is to construct the necessary masonry walls and supports. That it would be a much more serious injury to the plaintiff's property to leave the excavation in the condition in which it was when this action was commenced than to allow it to be proceeded with, and the necessary walls and supports constructed, is apparent. The only result of now granting a preliminary injunction would be to stop the work, leaving this hole in the ground, unsupported; while, if the contractors are allowed to proceed with the construction of the tunnel, the adjoining property would be secure against further settling or injury. The injunction asked for, therefore, would seem to be without any advantage to the plaintiff, but would subject him and the other property owners to the danger of having the adjacent rock settle into this excavation, and so injure, rather than protect, his property.

The learned counsel for the plaintiff insists that the operation of the road in this tunnel will be a serious injury to his property, and for that reason the further construction of the tunnel, as at present located, should be enjoined. But we think the question of the operation of the road should be left until it can be determined, by its actual operation, whether or not such operation will entail upon the adjoining property any injury or disadvantage. The importance of this public improvement, the fact that it has involved the expenditure of such a large amount of public money, and the necessity for additional means of transportation of passengers in New York, are facts which should be considered in determining whether the court should interfere by an injunction which would prohibit the completion of the public improvement, or adopt other methods to protect or compensate the abutting property owners. The question is whether there should be a preliminary injunction pending the trial of the action; and we think, in view of the situation, the enormous public interests involved, and in view of the facts that such an injunction, while affecting most seriously the defendants, would be of no advantage to the

plaintiff or the abutting owners, that the court, in the exercise of the judicial discretion, which it is bound to exercise in considering an application of this kind, was quite justified in refusing to grant the preliminary injunction asked for, leaving the question of the relief to which the plaintiff would be entitled to be determined upon the trial. Without attempting at all to indicate an opinion as to what the court should do when the question as to the final judgment is presented, we affirm the order appealed from as a proper exercise of discretion in refusing to grant an injunction before judgment.

It follows that the order appealed from should be affirmed, with $10 costs and disbursements.  All concur.