## In re BOARD OF RAPID TRANSIT RAILROAD COM'RS OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. May 12, 1905.)

STREET RAILROADS—CONSTRUCTION—AUTHORIZATION BY COURT—CONDITIONS— PAYMENT OF DAMAGES.

Const. art. 3, § 18, prohibits the construction of a street railroad except upon the consent of one-half of the property owners affected thereby, or, in case such consent cannot be obtained, upon the confirmation by the Appellate Division of a commissioners' report determining that the railroad should be constructed. Laws 1891, p. 5, c. 4, § 5, prescribes an appropriate procedure in accordance with the constitutional provision. An underground railroad procured an order of the Appellate Division confirming the report of commissioners in favor of the construction of the railroad according to certain plans. Subsequently, without either the consent of property owners or an order of court, the railroad made substantial modification in its plans, and completed its road according to such unauthorized modification. This construction materially damaged abutting property, but the road, as a whole, would be, in its operation, beneficial to the city. *Held,* that the Appellate Division had power to, and would as a condition of confirming a report of commissioners sanctioning the maintenance and operation of the railroad according to the modified plan, require the railroad to pay the property owners the amount of the damage done to them by the unauthorized construction of the road.

Van Brunt, P. J., dissenting.

Application for the confirmation of the report of commissioners appointed to determine whether the plans of the rapid transit commissioners for building the underground railroad between Thirty-Fourth and Forty-Second streets, in New York City, should be modified. Report confirmed on condition.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Albert B. Boardman and Edward M. Shepard, for the motion.
Nelson S. Spencer, for Emily A. Lawrence and others, opposed.
Arthur H. Masten, for Charles T. Barney and another, opposed.
Henry De Forest Baldwin, for the Manhattan Eye and Ear Hospital and others, opposed.
G. H. Crawford, for Frederick W. Devoe, opposed.
William N. Cohen, for Arabella D. Huntington, opposed.
Robert L. Harrison, for George H. Byrd, opposed.

INGRAHAM, J. The question whether this underground railroad should be constructed and operated according to the original plan, notwithstanding the refusal of the property owners to consent, was determined in favor of its construction and operation by the commissioners appointed by this court, which report was confirmed. Subsequently the rapid transit commissioners and the con-

tractors proceeded to make a substantial modification in the plans, which had been approved, by constructing the road under Park avenue, between Thirty-Fourth and Forty-Second streets, within a few feet of the abutting property, instead of along the center of the avenue, without the consent of the property owners, or, in lieu thereof, the consent of this court. After the tunnel was excavated, one of the property owners commenced an action to restrain the construction or operation of the railway, and, upon an application for a temporary injunction, this court held that this change of location was unauthorized, and that the construction of the road upon the modified plans was without legal authority. A temporary injunction, however, was refused, upon the ground that, as the excavation had been completed, the property owners would not be benefited by then stopping the work. Barney v. City of New York, 83 App. Div. 237, 82 N. Y. Supp. 124. Subsequently an application was made to this court for the appointment of commissioners to determine whether or not the subway should be constructed and operated upon the modified plans adopted by the commissioners. These commissioners have reported that the railroad mentioned in the petition of the board of rapid transit commissioners in this proceeding should be constructed and operated, adding, however, a recommendation that, in view of the great damage suffered by the property owners by reason of the excavation incident to the easterly tunnel or connected therewith, such conditions should be imposed, should the report of the commissioners be confirmed, as may seem to the court proper. A motion is now made to confirm this report.

After a consideration of the testimony before the commissioners, there can be no doubt, I think, but that the report should be confirmed; the only question being whether that confirmation should be absolute, without conditions, or whether conditions should be imposed. In determining this question, it must be assumed that this change of location was unauthorized, and that the construction of the tunnel upon the modified plans was prohibited both by the Constitution (article 3, § 18) and under the act authorizing the construction of the road. And the first question presented is as to the power of the court to impose a condition when confirming the report of the commissioners appointed under this provision of the Constitution and the statute.

Section 18 of article 3 of the Constitution, in regulating the power of the Legislature provides that:

"No law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of, that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained, or in case the consent of such property owners cannot be obtained, the Appellate Division of the Supreme Court, in the department in which it is proposed to be constructed, may, upon application, appoint three commissioners who shall determine, after a hearing of all parties interested, whether such railroad ought to be constructed or operated, and their determination, confirmed by the court, may be taken in lieu of the consent of the property owners."

Section 5 of chapter 4, p. 5, of the Laws of 1891, to comply with this provision of the Constitution, provides that, upon obtaining the approval and consent of the local authorities, the board of rapid transit commissioners shall take the necessary steps to obtain the consent of the property owners along the line of the route or routes. If such consent of property owners cannot be obtained, the said board may, in its own name, make application to the General Term of the Supreme Court in the judicial district in which said road is to be constructed for the appointment of three commissioners to determine and report, after due hearing, whether such railway ought to be constructed and operated. Upon such application, the General Term shall appoint three disinterested persons who shall act as commissioners. The said commissioners shall determine, after a public hearing of all parties interested, whether such railroad ought to be constructed and operated, and shall report the evidence taken to the General Term, together with a report of their determination whether such road ought to be constructed, which report, if in favor of the construction and operation of such road, shall, when confirmed by said court, be taken in lieu of the consent of the property owners.

These provisions are clearly intended to protect the interests of the owners of property abutting on the streets in which the railroad is to be constructed, and require that such owners should at least have an opportunity to be heard by an impartial tribunal before the streets upon which their property abuts should be appropriated for railroad purposes. Both the Constitution and the statute contemplate an application to be made under these provisions before the road is constructed; and, undoubtedly, until the consent of the property owners has been obtained, or a confirmation of the report of the commissioners had in lieu thereof, any construction or operation of a railroad in a public street is a public nuisance which it would be the duty of the court to abate. We have held (and I do not consider it open to question) that the construction of this road upon an entirely different plan from that which had been approved as required by the provisions of the Constitution and the statute was without authority, and therefore a public nuisance. This change of plan was strenuously objected to by the property owners as soon as they had knowledge that the plans were changed and the road was being constructed in violation of law. Those engaged in the construction of the road made no attempt to comply with the Constitution and the law until this court had decided that their proceedings were illegal and unauthorized. The road being now completed, they have made the application that they should have made before the road was constructed, and now urge that their illegal proceedings should be a reason for legalizing the illegal act without conditions—a proposition to which I am not willing to assent.

The question that we have to determine is whether the illegal construction of this portion of the subway and its future operation should be legalized, notwithstanding the opposition of the owners of property abutting on the street. It is not claimed that this

road will be of any benefit to the abutting owners of property. It runs under the ground, close to their property. It, however, is and will be a public benefit, giving to the public additional facilities for transportation between the different parts of the city. A case is therefore presented which justifies the court in confirming the report of the commissioners, and authorizing the construction of the road and its future operation, notwithstanding the objection of the property owners. But as the Constitution and the statute authorizing the building of this road required either the consent of the property owners, or the confirmation by this court of the report of the commissioners, in favor of the construction of this road, it seems to me that the court has the power to prescribe conditions which will protect the interests of the owners of abutting property so far as possible, and prevent the construction of a road which will be a benefit to the whole city or the public from being a serious injury to the abutting property, so as to appropriate the property rights of abutting owners for the benefit of the whole city—an effect which, as I understand it, these provisions of the Constitution were designed to prevent. In view of the interest of the city and its inhabitants, the road should be built and operated, notwithstanding the objection of the owners of abutting property. But that is no reason why the property of abutting owners should be seriously damaged by the construction and operation of the road, without affording them some means of obtaining compensation for the damage caused by its construction or operation. This court is placed in the position of determining, as against the protest of property owners, whether or not this road should be constructed and operated, and the Constitution requires the submission of that question to this court. And, the court having been given the power to determine the question, it certainly has the power to impose conditions which will prevent a substantial appropriation of the property of abutting owners in the street, or require those wishing to build the road to compensate the property owners for any injury to their property by the construction or operation of the road.

When the application is made before the road is constructed, the question whether or not its construction or operation will be an injury to abutting owners is generally involved in serious doubt. Undoubtedly, the construction of this road as originally designed by the rapid transit commissioners would have caused no injury to the owners of abutting property, and therefore it was not necessary for the protection of the owners of the abutting property to impose conditions before confirming the report of the commissioners authorizing it to be built. The situation now, however, is changed. The road had been constructed and is in operation; and when the application is to legalize an act which is concededly illegal, and the court can see just what injury has been caused to the abutting property, I think that not only has the court power, but that it is its duty, to impose such conditions as will indemnify the owners of abutting property for the injury that has already been sustained by the illegal and unauthorized construction or operation of the road.

I think that the evidence fairly shows that the future operation of the road will impose no substantial injury upon the owners of abutting property. But it is also shown beyond question that abutting property was seriously injured during the construction of the road, and the court, therefore, is in a position to determine with reasonable certainty the extent of this injury. It becomes, then, I think, the clear duty of the court to impose as a condition the payment, as a part of the expense of construction, of the amount of such damage.

To remit these property owners to their remedy at law for the damages that they have sustained would be a substantial denial of their right to have that question determined upon this application. The subcontractor who built this section of the road has become bankrupt, and subsequently died. It would seem that the abutting owners would have no relief against him, and the question of the liability of the city of New York, or of the general contractor and lessee of the road, is a serious one. If I am right in my conclusion that this court has the power and it is its duty to see to it that the owners of abutting property who have refused to consent to the construction of this road in the streets adjoining their property should, as far as possible, be protected from injury in consequence of the construction of the road, I think we should, in view of the testimony before the commissioners of the injury that the construction of the road has caused to the abutting owners, require those interested in constructing and operating the road to compensate the property owners for the damages that have been caused by the illegal and unauthorized construction of the road under the street adjoining their property.

Therefore, before the final order confirming this report is made, these abutting owners should have a right to present their claims and have the amount of the damage caused to their property by the construction of this subway ascertained, and, after the payment of those amounts, the final order can be entered approving the report of the commissioners. If the city of New York and the contractors or lessees of the road should see fit to refuse to make what I consider a fair and reasonable arrangement with the property owners, then the city of New York should be compelled to construct its road according to the original plans which have been approved by this court, and restore the remainder of the street to its condition before the unauthorized interference with it took place. In this way, and in this way only, can this court perform the constitutional duty imposed upon it of determining whether or not this road should be built and operated, notwithstanding the objection of the property owners.

Report confirmed, on conditions stated in opinion.

HATCH and LAUGHLIN, JJ., concur.

PATTERSON, J. I concur in the conclusion of Mr. Justice INGRAHAM that the report of the commissioners should not be con-

firmed until the property owners on Park avenue are compensated for the damage caused by the unlawful construction of the road.

VAN BRUNT, P. J. (dissenting). I do not think that the court has the slightest power to impose, as a condition of its consent, any such terms as are contemplated in this opinion.