OPINION OF THE COURT
David B. Saxe, J.
Providers of long-term health care facilities are obliged to treat patients with dignity and consideration. Admission as a resident or patient in a long-term health care facility does not *295 signal a termination of an individual’s rights, constitutional or otherwise.[1]
William Blackman, a 51-year-old black male paraplegic, is wheelchair bound. Since 1981, he has resided as a patient at Goldwater Memorial Hospital (Goldwater), a skilled nursing facility devoted to the care of the chronically ill. Located on Roosevelt Island, New York, its patient population is comprised of over 900 individuals most of whom have lost either or both of their arms or legs.
Mr. Blackman’s ordeal began on October 27, 1986 when he obtained a pass from the hospital staff for a leave of absence so that he could attend his father’s funeral in Alabama. The pass was good until November 1, 1986. Mr. Blackman, however, did not return to Goldwater until November 5th when he was told that there was no room or bed available for him. His failure to return or contact Goldwater by November 1st signaled to the staff that they could treat Mr. Blackman as having been "administratively discharged” and, as of November 3rd, a boarder and not a patient.
Despite the discharge, it appears that on November 5th Goldwater officials accommodated Mr. Blackman by offering him "boarder” status at the facility. Mr. Blackman was given a bed and remained as a "boarder” at Goldwater for one week. On November 7, 1986, in the early evening, Mr. Blackman was taken from Goldwater by van and left in a wheelchair on the street with three cartons of his belongings and $50.
While lodged as a temporary boarder at Goldwater, the petitioners moved by order to show cause for a preliminary injunction barring Mr. Blackman from the hospital. This application raised for determination the issue of whether Goldwater may consider a patient who had overstayed his leave of absence, "Administratively discharged”. Mr. Black-man, who was permitted to intervene, cross-moved for a preliminary injunction seeking reinstatement to Goldwater with full patient status. The thrust of his argument was that the administrative discharge effecting his status was an impermissible act by Goldwater personnel which violated a comprehensive State and city regulatory procedure involving the discharge and processing of patients.
Preliminarily, respondent Blackman moves to dismiss this *296 proceeding on the ground that petitioners lack standing to sue. Petitioners are Richard Kaufman, as the president of the Goldwater Memorial Hospital Community Board, both individually and on behalf of the members of the board. Standing requires that a litigant have a sufficient personal interest in obtaining the relief sought or that he is a sufficiently appropriate representative of other interested persons to warrant giving him the relief sought (Valley Forge Coll. v Americans United, 454 US 464 [1982]; Flast v Cohen, 392 US 83 [1968]).
In order to become a member of the Goldwater Community Board, each member must reside or work in the hospital or hospital service area. Additionally, a community board member must be a person who regularly utilizes the hospital as a primary source of health services. Since petitioners are part of the hospital community, their claim that Mr. Black-man poses a danger to the community and therefore their request to bar him from Goldwater demonstrates a sufficiently clear personal interest to grant them standing to sue.
As to the application for preliminary injunctive relief, it is well settled that the moving party must demonstrate and satisfy the following: (1) the likelihood of ultimate success on the merits; (2) that immediate irreparable injury would result if the requested relief was denied; and (3) that the balancing of the equities tips in favor of the moving party (Grant Co. v Srogi, 52 NY2d 496; Albini v Solork Assocs., 37 AD2d 835).
In support of their claimed right to bar Mr. Blackman from Goldwater, petitioners advance three reasons. First, it is alleged that Mr. Blackman repeatedly refused to cooperate with his own discharge planning, therefore serving as a basis for his being administratively discharged prior to October 27, 1987. Second, that by overstaying his leave of absence Mr. Blackman was deemed administratively discharged, becoming a boarder who was not entitled to protection from eviction. And, third, that even if Mr. Blackman had not been administratively discharged, his history of deviant sexual and other dangerous acts was a sufficient reason for the court to now bar him from the Goldwater patient and staff community.
The reasons advanced by the petitioners in support of their "administrative discharge” theory are specious. In fact, the concept of an administrative discharge appears to be a fiction that was created by petitioners.
With regard to Mr. Blackman’s alleged refusal to be discharged, petitioners claim that in November 1982 Mr. Black- *297 man was certified as being eligible to leave Goldwater. Yet, he refused to leave by allegedly rejecting over 40 apartments in prior years. Instead, he complained in writing to various State and city officials about the level of care at Goldwater.
In opposition, respondent points to Department of Health regulations which contain procedures which must be complied with before a patient is discharged or transferred.[2] The three bases for discharge are: (1) medical reasons; (2) the resident’s welfare or that of other patients and residents; and (3) nonpayment. If a patient is to be discharged, reasonable advance notice must be given to ensure an orderly transfer and discharge. The utilization review plan are the procedures by which patients are discharged or transferred. (10 NYCRR 731.11 [a]-[e].) This plan includes a medical evaluation of the patient’s need for medical treatment, the notification of a patient’s proposed discharge, the providing of alternative housing and the ongoing notification to the Department of Health of these decisions. The procedures also provide for a patient’s continued adverse stay, the right of the patient to appeal any decisions, and the obligation that the facility notify the Department of Health that the payment for this kind of facility and level of health care is no longer necessary.
In sum, it appears that patients at Goldwater and other similar facilities cannot be simply administratively discharged. There must be a verifiable and acceptable basis for seeking to discharge a patient and the reasons must be given to the Department of Health as well as to the patient. The petitioners have not demonstrated that they have complied with these procedures. Not one document was submitted to substantiate the allegation that Mr. Blackman was discharged prior to leaving for Alabama on account of his alleged past refusal to cooperate with his own discharge planning. Nor was there any factual substantiation advanced during the hearing that Mr. Blackman was offered but rejected over 40 apartments in the past. It is worth noting that petitioners never sought any administrative or judicial remedy to compel Mr. Blackman to participate in or accept the decision to discharge him.
Next, petitioners contend that since Mr. Blackman overstayed his leave, he lost the protected status of patient and became a "boarder” at Goldwater subject to immediate expulsion at the will of the hospital personnel. In opposition, *298 respondent Blackman claims that he received a verbal assurance that could return on the 5th of November but that, in any event, merely overstaying his pass is simply not a sufficient basis for labeling him a boarder.
It appears that the Medicaid reimbursement regulations promulgated by the Department of Social Services, which govern leaves of absences, provide no basis for administrative discharge. The regulations provide that Medicaid will pay for a patient’s bed while on an authorized leave for up to 18 days.[3] If Medicaid does not pay for the patient’s bed, then the facility may give that patient’s bed to another patient.[4] However, when a patient returns from a leave and finds that his bed has been occupied by another patient, he is entitled to the next available bed.[5]
This bed retention rule reflects a detailed treatment plan for situations when a patient is on a leave of absence. There are no provisions for a so-called administrative discharge if a patient returns a few days late. The only consideration is that the facility not be required to hold a bed open for which there is no payment.
Here, respondent Blackman, who may have overstayed his leave, was denied a return to his bed and room, retention of which is secured by Medicaid’s bed retention regulations. Although there is some question as to whether Mr. Black-man’s actual bed and room to which he had previously been assigned was occupied or empty, Goldwater was obligated to give Mr. Blackman priority readmission, which they did not. Instead, they "accommodated” Mr. Blackman for a few nights, deemed him a boarder, and denied him his rights as a patient.
It is evident from these regulations that petitioners’ reliance upon Mr. Blackman’s alleged past discharge or overstay of his leave as a basis for characterizing him as a boarder, are neither permissible nor appropriate or alternatively sanctioned by the Secretary of Health and Human Services. Mr. Blackman was not administratively discharged and petitioners cannot use that fiction as a basis for this injunction.
And finally, as an alternative to their reliance on the theory of administrative discharge, petitioners claim that Mr. Blackman should no longer be allowed to remain at Goldwater *299 because of his dangerous and deviant behavior. Both in the affidavit in support of the ex parte temporary restraining order and preliminary injunctive relief, it was alleged that over a period of time, Mr. Blackman has committed no less than 25 deviant acts ranging from sexual assault to feeding candy to diabetic patients. These charges appeared serious. And, it was on the basis of these charges that the temporary restraining order was signed. Yet, none of these charges were corroborated at the hearing.
The three reasons which plaintiffs advanced for their claimed right to bar Mr. Blackman from Goldwater are without merit. Accordingly, I find that the petitioners are not likely to prevail on the merits of this action. They have failed to substantiate the court’s initial inquiry.
Petitioners must also show that they would be irreparably harmed if an injunction was not granted by the court (De Candido v Young Stars, 10 AD2d 922). If Mr. Blackman is allowed to remain at Goldwater, petitioners claim that the patients and staff would be endangered by his behavior. Petitioners rely on various testimony and staff complaints regarding Mr. Blackman’s dangerous behavior.[6] But, as noted previously, these allegations were, for the most part, not corroborated.
Allegations that irreparable injury will occur must be supported factually and convincingly. The mere apprehension of irreparable harm will not suffice (City of Rochester v Sciberras, 55 AD2d 849). Thus, Mr. Blackman simply does not pose the kind of danger that warrants immediate expulsion from Goldwater. And, juxtaposed to petitioners’ allegations is Mr. Black-man’s concern that barring him from Goldwater would render him immediately homeless. Thus, on balance the party who is more likely to be irreparably harmed were the relief not granted is Mr. Blackman, not Goldwater.
For the same reasons, it is clear that the balancing of equities tips in favor of Mr. Blackman. And, here, the larger issues which courts may consider in deciding motions for injunctive relief are the enormous public interests involved. (See, Seitzman v Hudson Riv. Assocs., 126 AD2d 211; Barney v City of New York, 83 App Div 237, 241.) The right of all patients in long-term health care facilities to be treated with dignity in accordance with regulations designed for their care *300 and protection is of importance not just to Mr. Blackman but to all patients at these facilities. When faced with such a situation, courts should not tolerate nor condone an abuse of patient’s rights by providers in these facilities.
For these reasons, petitioners’ motion for preliminary injunctive relief is denied and respondent Blackman’s cross motion for injunctive relief is granted.

. Comment, Missouri’s Transfer and Discharge Standards for Nursing Home Residents, 24 St. Louis U LJ 784; Patients’ Bill of Rights, 10 NYCRR 414.14 (12).

. 10 NYCRR 414.14 (5).

. 18 NYCRR 360.20 (c) (1) defines leaves of absence as including "visits with relatives/friends”.

. 18 NYCRR 360.20 (c) (2) (i).

. 18 NYCRR 360.20 (c) (2) (i).

. Petitioners’ exhibit A lists Mr. Blackman’s last known disruption as occurring on April 23, 1985.