RONALD LUSKER, Appellant, v JACK TANNEN et al., Respondents.

First Department, November 30, 1982

APPEARANCES OF COUNSEL

*Kevin J. Plunkett* of counsel (*Plunkett & Jaffe, P.C.,* attorneys), for appellant.

*Morrell I. Berkowitz* of counsel (*Rudes & Lax,* attorneys), for respondents.

SULLIVAN, J. P.

On June 27, 1980, plaintiff entered into a written contract with defendants Tannen and Biblo, the owners of all of the issued and outstanding shares of common stock of 63-4th Avenue Realty Corporation, for the purchase of their stock. The corporation's sole asset was the real property located at 63 4th Avenue, New York, New York.

Plaintiff paid $25,000 upon execution of the contract,[1] which provided for the payment of an additional $25,000 at closing and the delivery of two notes in the aggregate sum of $225,000, representing the balance of the purchase price, payment of which was to be guaranteed by the corporation. The notes were to be paid in equal monthly installments over 10 years when the principal then remaining was to be paid in a lump sum. As collateral, the corporation was to execute a first mortgage on the property located at 63 4th Avenue. The contract designated September 1, 1980 as the date for closing.

The contract contained the following provision: "Default by BUYER. If on the date set for the closing, or on any adjourned date mutually agreed to, the SELLERS are ready, willing and able to carry out and perform this Agreement, and the BUYER refuses or is unwilling to perform his obligations, then in such event the amount paid on account of the purchase price * * * shall be retained by the SELLERS as liquidated damages, and this Agreement shall thereupon become void, and neither party shall have any further rights against the other." The contract also provided that "[t]his [a]greement may not be modified except by an instrument in writing duly executed by the parties."

The closing did not take place as scheduled. Instead, according to plaintiff, some time in August of 1980, the sellers' attorney consented to an adjournment, sine die, so that plaintiff could obtain the necessary financing to complete the transaction. While denying that plaintiff ever requested an adjournment from him either before or after September 1, 1980, the sellers' attorney concedes that he had a conversation with plaintiff in mid-September in

---

1. Although the contract provided for the payment of $25,000 on execution, only $15,000 was paid at that time. The balance of $10,000 was subsequently paid.

which he advised plaintiff of his clients' fears about plaintiff's inability to service the mortgage, but added that he would try to persuade his clients to close in accordance with the terms of the contract. Similar conversations are alleged to have taken place in October and November, 1980, in the course of which the sellers' attorney again stated that he would try to convince his clients to close. During the period before and after September 1, 1980, the sellers' attorney never demanded, either orally or in writing, that plaintiff proceed to a closing.

According to plaintiff, it was not until December 11, 1980, after he had finally obtained the financing commitment he had sought and when he attempted to set a closing date, that the sellers' attorney advised him that the sellers had finally decided not to close with him. Plaintiff thereupon commenced this action for specific performance against the sellers, naming 63-4th Avenue Realty Corp. as a party defendant. He also filed a *lis pendens* against the real property.

On plaintiff's motion for a preliminary injunction restraining the sellers from transferring or selling the real property and the corporate stock during the pendency of the action, Special Term, finding the sole question to be whether an adjournment of the contract closing date had been granted, referred the matter for a hearing. After the hearing the referee reported that "[t]he testimony was conflicting and subject to misunderstanding" but she found the writing controlling in any event, since the contract barred any modification thereof except by a writing signed by the parties. Accordingly, the referee recommended a resolution of the issue in defendants' favor. Special Term confirmed the report, denied the motion for a preliminary injunction, granted defendants' companion motion to dismiss the complaint, canceled the *lis pendens,* and continued the undertaking which plaintiff had furnished in connection with the grant of a temporary restraining order. This appeal followed.

■ Contrary to defendants' argument and Special Term's dictum, the referee never found that the sellers' attorney had not consented to an adjournment. In reviewing the evidence the referee merely recounted the attorney's testi-

mony that he neither received nor granted a request for an adjournment. Without resolving the issue, the referee recommended that, irrespective of what the parties might have discussed, the closing could not be adjourned without an agreement in writing, and it was this view that Special Term adopted in finding plaintiff to be in default as of September 1, 1980, and in dismissing the complaint. This was error. We find that unresolved issues of fact bar a summary resolution of whether plaintiff was in default on September 1, 1980.

In holding that the contract itself prohibits any oral modification or extension of the closing date, Special Term relied upon subdivision 1 of section 15-301 of the General Obligations Law,[2] which bars, by oral executory agreement, the modification of a written contract expressly proscribing oral modification. Over the years, however, the courts have recognized, as qualifications to the doctrine of no oral modifications of written agreements barring the same, partial performance (see *Alcon v Kenton Realty,* 2 AD2d 454; also, *McKinley v Hessen,* 202 NY 24; *Canda v Totten,* 157 NY 281), and equitable estoppel (see *Imperator Realty Co. v Tull,* 228 NY 447, 453; *Thomson v Poor,* 147 NY 402, 409-410; *Gray v Met Contr. Corp.,* 4 AD2d 495, 497).

In *Rose v Spa Realty Assoc.* (42 NY2d 338, 343-344), the Court of Appeals had occasion to delineate the distinction between these two exceptions:

"Where there is partial performance of the oral modification sought to be enforced, the likelihood that false claims would go undetected is similarly diminished. Here, too, the court may consider not only past oral exchanges, but also the conduct of the parties. But only if the partial performance be unequivocally referable to the oral modification is the requirement of a writing under section 15-301 avoided * * *

"There is, however, another qualification to the mandates of section 15-301. Analytically distinct from the

---

**2.** This section provides: "A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."

doctrine of partial performance, there is the principle of equitable estoppel. Once a party to a written agreement has induced another's significant and substantial reliance upon an oral modification, the first party may be estopped from invoking the statute to bar proof of that oral modification * * * Comparable to the requirement that partial performance be unequivocally referable to the oral modification, so, too, conduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written".

In our view the allegations contained in plaintiff's affidavit submitted in support of his cross motion to reject the referee's report[3] and for summary judgment present factual issues, the resolution of which might make one or both of these exceptions applicable. As evidence that an adjournment had indeed been granted, plaintiff alleges that from time to time subsequent to September 1, 1980, the contract closing date, and until well into November, 1980, he entered onto the premises at 63 4th Avenue with the permission and consent of the sellers to perform work, to take measurements, to participate in on-site conferences with an architect he had retained in the spring of 1980 for the design of a restaurant and a delicatessen which he had planned to construct on the premises, and to show the premises to prospective tenants.

More specifically, plaintiff states that on September 4, 1980 a Consolidated Edison representative, at his request and with defendant Biblo's permission, inspected the premises for the purpose of installing gas service; that in October 1980, plaintiff and his plumber and various workmen entered the premises to install a gas sleeve in the basement at which time one of the sellers, Biblo, who was present, upon being advised of the reason for their presence, indicated that he had no objection since the building would soon be plaintiff's; and, that subsequent to September, 1980, plaintiff ran advertisements in both the *New York Times* and the *Village Voice* for the rental of space at

---

**3.** Although not part of the transcript of the referee's hearing, these allegations were properly before the court even on the motion to reject the report since the referee's recommendation avoided the framed factual issue, to which the testimony was limited and turned on a point of law, to which plaintiff had a right to respond factually.

the premises, as a result of which over 30 prospective tenants responded and were, on each occasion, shown the premises without any objection by defendant Biblo.

Moreover, we find it significant that at no time after September 1, 1980, did the sellers' attorney ever advise plaintiff, either orally or in writing, that he was in default and that the contract was terminated. (Cf. *Cliffs Mgt. Corp. v Great Eastern Mgt. Corp.,* 85 AD2d 584, 585.) Rather, in mid-September, two weeks after the contract closing date, he was advising plaintiff that he would try to persuade his clients, who were apparently concerned, not with the passage of the contract closing date without a closing, but, rather, with plaintiff's ability to carry the notes and the prospect of an eventual foreclosure, to go through with the transaction. Plaintiff received the same assurances throughout October. Plaintiff's attorney testified that on two separate occasions in November the sellers' attorney advised him that he would try to convince the sellers to close. This testimony raises serious questions as to whether the sellers considered plaintiff to be in default on September 1, 1980, as they now claim, or whether, as plaintiff's proofs seem to suggest, they were primarily interested in casting about for a better deal while holding onto the June 27, 1980 contract as a fallback position.

In all of the circumstances, it seems to us that plaintiff's post-September 1, 1980 activities at the premises, with the knowledge and consent of the sellers, if established, could be found by the trier of the facts to constitute partial performance which is unequivocally referable to an oral agreement, express or at least implied, to adjourn the closing so that plaintiff might have more time to secure the less onerous financing which he was seeking. Alternatively, the sellers' conduct in knowingly permitting plaintiff to expend time, effort and money after the September 1, 1980 closing date could, if established, constitute an equitable estoppel. The sellers' conduct in allowing plaintiff onto the premises after September 1, 1980, for the purposes alleged, is not compatible with the contract as written unless the parties had at some point agreed that the closing need not take place on that date.

There is another and perhaps even more compelling reason why the complaint should not be dismissed. In seeking specific performance of the June 27, 1980 agreement plaintiff has proceeded in equity, rather than at law. The distinction is significant since the rule of equity is that time of performance will not be considered of the essence of the contract unless it affirmatively appears that the parties regarded it as a material consideration. (See *Schmidt v Reed,* 132 NY 108, 113; *Lese v Lamprecht,* 196 NY 32, 38; *Ballen v Potter,* 251 NY 224; see, also, *Hubbell v Von Schoening,* 49 NY 326.) As one court has noted: "The mere insertion in the contract of a day for its completion does not make such time the essence of the contract, and it will not be implied as essential except where the subject of the sale has a fluctuating value, or where the object of the contract is a commercial enterprise, or the delay in completion would involve one of the parties in a serious loss. When time is not by stipulation or by implication of the essence of the contract a court of equity will disregard it and decree specific performance when an action at law has been lost by default of the party seeking performance, if it be conscientious that the agreement be performed. The fact that the party may not have an action at law is a reason for a decree for specific performance". (*Hun v Bourdon,* 57 App Div 351, 354.) On the other hand, the general rule of law is that the stipulated time of performance in executory contracts is of the essence unless a contrary intent appears. (See *Schmidt v Reed,* 132 NY, at p 113; see, also, *Mercantile Nat. Bank of City of N. Y. v Heinze,* 75 Misc 551, 559.)

The equitable rule that absent a contrary intent time is not of the essence is invoked usually, but not exclusively, in matters involving the sale of real property. (*Mercantile Nat. Bank v Heinze,* 75 Misc, at p 562.) In the appropriate case, an action for specific performance of a contract for the sale of personalty will lie. "The rule is that, as to contracts pertaining to personal property, a party should be confined to his action for damages, unless it appears that he is entitled to the thing contracted for in specie, which to him has some special value and which he cannot readily obtain in the market, or in cases where it is apparent that compensation in damages would not furnish a complete and

adequate remedy." (*Butler v Wright,* 186 NY 259, 261-262.) This is such a case. It is obvious that the sole purpose of the contract, which speaks of the sale in terms of a real estate transaction, even to the point of describing the property by metes and bounds, was to convey the corporation's only asset — the real property. The checks in payment of the $25,000 deposit bore a legend indicating that they were given in part payment of the purchase price of the premises at 63 4th Avenue. One of the checks bore a similar notation just above the sellers' indorsement. The stock being conveyed had no value other than to reflect ownership of the premises.

We were advised at the argument that the premises have since been conveyed, a development which, although not part of the record, renders academic plaintiff's request for injunctive relief and reinstatement of the *lis pendens.* In this connection we note also that the complaint pleads a cause of action for specific performance only, a form of relief which, with this recent development, is no longer available. Thus, plaintiff may be left with only a claim for damages. Where a plaintiff succeeds in proving his entitlement to equitable relief, and the granting of such relief "appears to be impossible or impracticable, equity may award damages in lieu of the desired equitable remedy." (*Doyle v Allstate Ins. Co.,* 1 NY2d 439, 443; see *Valentine v Richardt,* 126 NY 272, 277; *Murtha v Curley,* 90 NY 372; *Van Rensselaer v Van Rensselaer,* 113 NY 207, 214; *Bell v Merrifield,* 109 NY 202, 207.)

Accordingly, the order, Supreme Court, New York County (MARESCA, J.), entered September 10, 1981, which, *inter alia,* confirmed the referee's report and dismissed the complaint, should be modified, on the law, with costs and disbursements to plaintiff, the motion to confirm the referee's report and to dismiss the complaint denied, the motion to reject the referee's report granted, and, except as thus modified, affirmed.

MARKEWICH, BLOOM and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on September 10, 1981, unanimously modified, on the law, the motion to confirm the referee's report and to dismiss the

complaint denied, the motion to reject the referee's report granted, and, except as thus modified, affirmed. Appellant shall recover of respondents $75 costs and disbursements of this appeal.