In re CENDANT CORPORATION
PRIDES LITIGATION.

Welch & Forbes, Inc., an institutional investment manager, individually and on behalf of all others similarly situated,

v.

Cendant Corporation; Merrill Lynch & Co.; Chase Securities, Inc.; Henry R. Silverman; Walter A. Forbes; Cosmo Corigliano Cendant Corporation, Appellant.

No. 00-5199.

United States Court of Appeals,
Third Circuit.

Argued Oct. 25, 2000.

Filed Nov. 22, 2000.

Michael Rosenbaum, (Argued), Carl Greenberg, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, Short Hills, NJ, Samuel Kadet, Skadden, Arps, Slate, Meagher & Flom, New York City, for appellant.

Roger W. Kirby, (Argued), Kirby, McInerney & Squire, New York City, for the appellee, PRIDES Class.

Before: MANSMANN, SCIRICA and FUENTES, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

Cendant Corporation and Cendant Capital I ("Cendant") appeal the District Court's orders permitting certain late claims and late cures to participate in an agreed-upon settlement of a securities class action suit. Cendant claims that the District Court erred in failing to enforce the settlement agreement as written, and instead, in effect, imposed upon the parties a settlement other than the one to which they agreed. Further, Cendant claims that the District Court erred by applying the "excusable neglect" standard to permit class members who submitted untimely claims to participate in the settlement. Finally, Cendant argues in the alternative that even if the "excusable neglect" standard were applicable here, the District Court erred by allowing certain claimants to participate in the settlement since those claimants failed to demonstrate "excusable neglect." The PRIDES Class defends the District Court's conclusions.

With respect to the claim that the District Court failed to enforce the settlement agreement as written, we must determine, first, whether the District Court had the power to extend the deadlines it had inserted into the Settlement at the request of the parties and had retained the discretion to allow the late-filed and late-cured claims, and second, if so, whether the District Court in applying the "excusable neglect" standard, did so appropriately. We conclude as to the first question that the court-ordered deadline for submitting claims was not part of Cendant's bargain and thus the date was not forever unalterable. On the contrary, we agree with the District Court that under both its inherent equitable powers, and under the specific terms of Fed.R.Civ.P. 6(b)(2), the District Court retained the power to modify the Stipulation terms. As to the second question, we agree, too, with the District Court, that the appropriate standard under which requests to allow tardy proofs of claim or requests to cure is "excusable neglect." Finally, we find that the District Court did not abuse its discretion in concluding that the late claimants successfully demonstrated that "excusable neglect" caused the delays. We will, therefore, affirm.

Because this litigation is already the subject of at least three published opinions, each exhaustively setting forth the procedural and factual background, we will not do so here, but instead refer interested

parties to these prior dispositions.[1] We set forth only those facts crucial to a resolution of the disputes here.[2]

## I.

On March 17, 1999, the parties presented a proposed settlement agreement between Cendant and the class of persons who purchased Income or Growth Prides ("PRIDES") during the period February 24, 1998 through April 15, 1998.

The draft Stipulation of Agreement of Settlement and Compromise (the "Stipulation") and the draft Order Regarding Proposed Class Action Settlement, Settlement Hearing and Notice of Proposed Settlement (the "Settlement Hearing Order") jointly submitted by the parties to the District Court in connection with the March 17, 1999 hearing, did not contain any reference to a specific date as the deadline for submission of Proofs of Claim. The Settlement Hearing Order contained a blank space for the date, to be selected and inserted by the District Court: "The deadline for submitting Proofs of Claim (the "Deadline") shall be _____, 1999." The Stipulation defined the Deadline only as the date to be identified as the deadline in the notice to be sent to class members. At the hearing, the District Court selected and then wrote in, by hand, the date of "June 18, 1999" in the blank that had been left by the parties for the Deadline in the draft Hearing Order. The District Court also filled in other dates that had been left blank by the parties in the Draft Hearing Order, the determination of which followed from the selection of June 18, 1999. The District Court approved the Prides Settlement by an order dated June 15, 1999.

Under the terms of the Stipulation, Cendant agreed to distribute one Right, with a theoretical value of $11.71, for each PRIDES owned as of the close of business on April 15, 1998. *See also In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d at 539–40.[3] To collect the Rights each PRIDES owner was required to submit a valid proof of claim by June 18, 1999, the deadline selected by the District Court at the hearing and inserted into the Hearing Order. Under the terms of the Settlement Hearing Order, a settlement administrator, Valley Forge Administrative Services, was to verify the proofs of claim. If the administrator rejected a claim, each claimant would be given twenty days after the administrator mailed a request to cure its claim. Further, the administrator was required to send a final notice of disallowance to claimants within 60 days of the deadline for the submission of proofs of claim, *i.e.*, within 60 days of June 18, 1999. The deadlines were provided in both individual and published class notices. In short, the deadlines respecting the submission of proofs of claim and cures of proofs of claim had not been negotiated by the parties, but rather these deadlines had been supplied by the District Court in the order preliminarily approving the settlement.

Accordingly, claims were submitted and during July 1999, the claims administrator issued requests to cure, and on August 17, 1999, rejection letters. In addition, although not obligated to do so, on August 5, 1999, the administrator mailed a second request to cure to most institutional

---

**1.** Opinions in *In re Cendant Corp. Litig.*, 182 F.R.D. 144 (D.N.J.1998), *In re Cendant Corp. Prides Litig.*, 51 F.Supp.2d 537 (D.N.J.1999), and *In re Cendant Corp. Prides Litig.*, 189 F.R.D. 321 (D.N.J.1999), provide a full factual and procedural history of this litigation.

**2.** Bearing in mind the expedited nature of this appeal, for our recitation of the pertinent historical facts we have relied heavily upon the appellee's brief. These facts are of rec-

ord, and for the most part, not disputed by the parties.

**3.** Cendant agreed to issue two New Income Prides or two New Growth Prides to any person who delivered to Cendant three Rights, together with existing Income or Growth Prides, respectively, before the expiration of the close of business on February 14, 2001, unless the Prides are amended. *Id.*

clients, and although not obliged to do so, on August 27, 1999, mailed another letter urging claimants whose claims or cures were being attacked as being untimely to provide explanation to the District Court by September 7, 1999.

On September 7, 1999, Cendant filed a motion to disallow late and purportedly deficient proofs of claim. Cendant objected to fifty-four claims filed after the June 18, 1999 deadline, one hundred and forty-one claims accepted by the administrator after the twenty-day time-to-cure period had expired, and twelve claims that Cendant asserted were supported by insufficient documentation. Claims for approximately 20.7 million Rights had not been disputed.

The PRIDES Class, in response, submitted a brief and supporting papers on behalf of class members whose claims were being disputed generally, and in particular on behalf of certain class members. The PRIDES Class also filed a cross-motion to extend the time for filing proofs of claim and to extend the time to respond to the administrator's requests to cure. The PRIDES Class asserted that those claims should be allowed that either were set in motion toward the administrator by June 18, 1999 or were cured by August 17, 1999, or were accompanied by an explanation for tardiness; and were completed and substantiated to the reasonable satisfaction of the administrator. At a hearing held on October 6, 1999, the District Court described its role as follows:

> I select the date which is subject to change. And you [Cendant] and everyone else involved in this case knows that that date was subject to change based upon cause.

By a decision dated October 21, 1999, the District Court denied Cendant's motion and granted that of the PRIDES Class, extending the deadline for the submission of proofs of claim from June 18, 1999 to September 7, 1999, and extending the date for the submission of papers in response to requests to cure from August 17, 1999 (the latest possible date for submission under the District Court's previous order) to September 7, 1999 as well. *See In re Cendant Corp.*, 189 F.R.D. 321, 327. The District Court determined that each late claim should be examined under an "excusable neglect" standard and that the District Court would examine each late claim or cure filed before September 7, 1999 to determine if there had been "excusable neglect," and if the claim were otherwise valid. The District Court made clear that it would consider only information that claimants had supplied prior to the extended cut-off date of September 7, 1999.

The District Court expressly relied upon the Court's general equitable power to define the scope of class action judgments and settlements and Fed.R.Civ.P. 6(b)(2), which permits courts to enlarge the time to respond to court ordered deadlines. "Until the fund created by the settlement is actually distributed," the District Court held, quoting the Second Circuit, "the court retains its traditional equity powers ... to protect unnamed, but interested persons." *Id.* (*quoting Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir.1972)).

The District Court determined that any extension of the June 18, 1999 deadline for filing proofs of claim would "not change the bargained-for terms of the Stipulation" because the parties had not negotiated for a date-certain but left the date blank for insertion by the District Court. *Id.* at 324–25.

The District Court considered *In re Crazy Eddie Securities Litig.*, 906 F.Supp. 840 (E.D.N.Y.1995), a case in which the United States District Court for the Eastern District of New York rejected a similar argument by a defendant that the Court-ordered deadline was "an integral part of the bargain" because the proof of claim "simply contain[ed] a blank where the date should be inserted." As the District Court here noted:

The *Crazy Eddie* court ... rejected defendant's argument .... because (1) the Proof of Claim "simply contain[ed] a blank where the date should be inserted"; (2) the judge who entered the settlement order determined the deadline; (3) under the terms of the settlement, the claimants were given time to cure deficient claims; and (4) the settlement allowed the court to review rejected claims. A similar situation is present here. Like the *Crazy Eddie* settlement deadline, the June 18 deadline was left blank in the March 17 Order and was set by the Court. Further, the Cendant settlement allows claimants time to cure and permits the Court to review the claims. The Court, therefore, cannot conclude that the June 18 deadline was an essential part of Cendant's bargain. It follows that Cendant will not be prejudiced by failing to receive its benefit of the bargain if the Court extends the deadline for filing proofs of claim.

(citations omitted.)

The District Court also held that Cendant was unable to show immediate economic dislocation, impact or harm to the corporation if the District Court were to extend the deadline for the filing of claims. The District Court noted that "the time obligation remains the same as before with the original issue."

The District Court determined that "in the aggregate the claimants' neglect to strictly adhere to the deadlines for filing proofs of claim and/or responding to requests to cure is excusable." The District Court emphasized that by virtue of the extension of time, "Cendant will not be unreasonably, nor palpably, nor illegally harmed ... because the Court iterates the original limits of ... Cendant's financial obligations willingly undertaken [$341,480,-861] have not been expended nor has the potential number of issued rights, [29,161,-474] increased."

On January 14, 2000, the District Court issued an order allowing certain late claims respecting 1,727,991 Rights and disallow-ing others, and by an order dated February 22, 2000, the District Court authorized distribution of Rights to settling PRIDES Class members and designated the October and January decisions as final and appealable judgments.

Cendant now appeals, asserting that the rights of late-filing and late-curing class members were extinguished after June 18, 1999, and twenty days following the Notices of Cure, respectively, and that, as such the District Court's allowance of late-filed and late-cured claims was error.

■■■ We review the District Court's modification of its own order establishing a deadline for abuse of discretion. *Dominic v. Hess Oil V.I.,* 841 F.2d 513, 516 (3d Cir.1988), *see also Adkins v. United States,* 816 F.2d 1580, 1581 (Fed.Cir.1987). Similarly evaluated under an abuse of discretion standard is the District Court's allowance of late claims in a class action claims settlement. *In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1128 (9th Cir.1977). We have held as to abuse of discretion, generally, that "an abuse of discretion arises when the [D]istrict [C]ourt's decision 'rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Oddi v. Ford Motor Co.,* 234 F.3d 136, 146 (3d Cir.2000) (citation omitted). An abuse of discretion may also occur "when no reasonable person would adopt the district court's view." *Id.* Finally, "we will not interfere with the [D]istrict [C]ourt's exercise of discretion 'unless there is a definite and firm conviction that the court ... committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Id.* quoting *Hanover Potato Products v. Shalala,* 989 F.2d 123, 127 (3d Cir.1993).

■■■ Cendant, which seeks to overturn the District Court's decision, contends that our review over this entire case should be plenary. This assertion follows from Cendant's leitmotif that this case is solely one

of contract "interpretation." While basic contract principles do indeed apply to settlement agreements, several times we have held that contract interpretation is a question of fact, and review is according to the clearly erroneous standard. *John F. Harkins Co. v. Waldinger Corp.* 796 F.2d 657 (3d Cir.1986); *Ram Construction v. American States Ins.*, 749 F.2d 1049, 1052–53 (3d Cir.1984). In contrast, contract construction, that is, the legal operation of the contract, is a question of law mandating plenary review.[4] *Harkins*, 796 F.2d at 659. Here, contract interpretation, and thus the clearly erroneous standard, governs the District Court's factual appraisal that the June 18 deadline was not part of Cendant's bargain especially where, as here, the Court supplied the date. We have stated that "a finding of fact is clearly erroneous when, after reviewing the evidence, the court of appeals is left with a definite and firm conviction that a mistake has been committed." *United States v. Various Articles of Merchandise*, 230 F.3d 649, 655 (3d Cir.2000) (citation omitted); *see also United States v. United States Gypsum*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

## II.

### A. The District Court's Power to Modify the Stipulation

■ Cendant claims that the District Court erred in failing to enforce the settlement agreement as written, and instead, in effect, imposed upon the parties a settlement other than the one to which they agreed. In essence, Cendant asserts that claims upon a share of the Settlement fund become worthless at the stroke of midnight on certain dates or upon the failure of punctilious document compliance. Cendant either portrays the dates as a crucial "bargained-for" part of the settlement negotiations, or more subtly, alternatively portrays the iron-clad, absolute nature of the deadlines as *the* crucial "bargained-for" part of the settlement negotiations. The PRIDES Class has maintained throughout this case that the parties did not negotiate the June 18, 1999 deadline for filing proofs of claim, but rather that the District Court selected that date. The District Court found not only that the deadline had been left blank and was set by the court, but also that the June 18 deadline was not an "essential part of Cendant's bargain." These factual findings can only be overturned by our determination that they are "clearly erroneous." We find that since the deadline date was not agreed upon by the parties nor set by them, these facts are not "clearly erroneous," but rather in concert with a plain reading of the Stipulation and the history of the case in general.[5]

■ Examining the "four corners" of the Stipulation as a contract,[6] as Cendant

---

**4.** *See Ram Construction*, 749 F.2d at 1052–53, for an exhaustive discussion of the distinction between the definitions of interpretation and construction and the respectively applicable standards of review.

**5.** This is one crucial way in which this case is distinguishable from *In re ML–Lee Acquisition Fund II*, 1999 WL 184135 (D.Del.1999). In *ML–Lee*, the District Court for the District of Delaware was asked to use its equitable powers to make incidental modifications to a settlement agreement. It declined to do so, while recognizing that it possessed those equitable powers. The court held that "under the circumstances of the instant case, equitable principles do not require the court to modify the Settlement Agreement." *Id.* at *2. The court specifically found that the parties "ne-

gotiated and bargained for the deadline" to submit forms and the date by which to respond to requests to cures, and that to provide time extensions would, under the specific facts there, substantially change the negotiated bargain. *Id.*

**6.** Also supporting our conclusion here regarding deadlines is New York contract law, which governs this case. The District Court found that this Stipulation did not include a "time is of the essence" clause. Under New York law, "parties are presumed to have agreed that time is of the essence unless there is contract language to the contrary," in actions at law, *however, "the converse is true in an action in equity...."* *Towers Charter & Marine v. Cadillac Ins.*, 894 F.2d 516, 523 (2d Cir.1990) (emphasis supplied) (citation omit-

urges us to do, we observe that the Stipulation itself anticipates the need for some claimants to cure their proofs of claims, and the need for an extension of time in which to do so. The Stipulation provides, in pertinent part:

A claimant shall have twenty (20) days after the mailing of such Request to Cure to respond thereto or to explain why substantial compliance therewith cannot be made. Failure to respond to such Request to Cure ... shall constitute consent to ... disallowance of the claim....

and

[w]ithin 20 days after the date of mailing of such Notice of Disallowance, any unresolved objection that Cendant has to any determination shall be submitted to the Court for summary disposition on an expedited basis. The Court shall hear and resolve the validity of all Proofs of Claim pursuant to the Settlement Hearing Order.

The explicit inclusion of a mechanism in the Stipulation for curing deficient claims after June 18, 1999, underscores the flexibility of that deadline. *Compare Crazy Eddie*, 906 F.Supp. at 845 ("[T]he anticipated flexibility in processing claims is also apparent in [the] paragraph ... which permits the Claims Administrator to give class members with deficient claims an opportunity to cure.").

Though Cendant argues on appeal that they and the Stipulation document ascribed to the District Court only the ministerial responsibilities of interpreting and enforcing the terms of an ordinary contract, the Stipulation actually places into the District Court's jurisdiction ongoing authority over the Settlement, and with that comes the discretion necessary to exercise jurisdiction. The Stipulation provides that the District Court shall retain "jurisdiction over the implementation of the Settlement and the distribution of the Rights, the Additional PRIDES, the New PRIDES, and the Special PRIDES." Thus, we do not find error in the District Court's conclusion that, based upon the Stipulation itself, "the Cendant settlement allows claimants time to cure and permits the Court to review the claims"; nor do we find error in the District Court's conclusion that it could, without upsetting the bargained-for terms of the Stipulation, modify particular dates to file and cure claims.

In addition to deriving its authority from the terms of the Stipulation itself, the District Court, as it cogently articulated, has the general equitable power to modify the terms of a class action settlement. Though several aspects of this case are governed by straight contract law, Cendant's argument that this case is governed *only* by black-letter contract law is unavailing. In a class action settlement, a court retains special responsibility to see to the administration of justice. It is worth noting at this juncture that the foundation of this settlement litigation was a securities fraud class action against Cendant alleging overvaluation of stock, not a mere contract between neighboring farmers for the purchase of a milk cow. Here, the District Court retains the "ultimate responsibility" for the protection of class members. *Maywalt v. Parker & Parsley Petroleum*, 67 F.3d 1072, 1078 (2d Cir. 1995).[7] We find right on target the Dis-

---

ted). *See also Lusker v. Tannen*, 90 A.D.2d 118, 124, 456 N.Y.S.2d 354, 357 (1st Dept. 1982) ("[T]he rule in equity is that the time of performance will not be considered of the essence unless it affirmatively appears that the parties regarded it as a material consideration."). Though Cendant brings to our attention a clause in the Stipulation prohibiting modification of its terms other than in a writing signed by the parties, this clause does not bind the District Court, but rather is merely a method for the parties themselves to effectuate changes.

7. Indeed, we have remarked in another context that class actions themselves are grounded in equity. *See, e.g., Grimes v. Vitalink Communications*, 17 F.3d 1553, 1570 (3d Cir. 1994) ("[E]quity's long experience with the administration of estates commonly requiring resolution of competing claims to a res among various kinds of creditors and classes

trict Court's assertion of its traditional equity powers over the disposition of the settlement here:

> "Until the fund created by the settlement is actually distributed, the court retains its traditional equity powers ... to protect unnamed, but interested persons." *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir.1972). A Court may assert this power to allow late-filed proofs of claim and late-cured proofs of claim. *See id.; see also In re Agent Orange Product Liability Litig.*, 689 F.Supp. 1250, 1263 (E.D.N.Y.1988); *The Manual For Complex Litig.* § 30.47 at 248 (3d ed. 1995) ("Adequate time should be allowed for late claims before any refund or other disposition of settlement fund occurs.").

> Courts which have considered requests to extend deadlines for filing proofs of claim and other settlement documents have generally subjected each request to a general "good cause" analysis. *See Kyriazi v. Western Elec. Co.*, 647 F.2d 388, 396 (3d Cir.1981) (affirming trial court's application of a good cause standard to claims of plaintiffs who failed to opt-in to settlement by deadline); *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir.1977) (affirming district judge's decision that he "would have discretion to permit a claim and allow a late claim when there's good and sufficient cause shown therefor"); *see also Grace v. City of Detroit*, 145 F.R.D. 413, 414–15 (E.D.Mich.1992) ("The adoption of the good cause standard [to a decision to accept untimely claim forms] is 'an appropriate exercise of the trial court's discretion in defining the scope of the class action judgment and settlement.' ")

(some citations omitted).

Consequently, far from serving a merely ministerial function with respect to the disposition of a class action settlement, when parties avail themselves of the Dis-

trict Court to implement such a settlement, the District Court may use its traditional powers to implement the settlement fairly and in accordance with its usual role. This applies not only to its powers in equity, but also to the statutory powers granted by Congress, such as the Federal Rules of Civil Procedure.

 When the District Court undertakes to implement a settlement such as this, the Federal Rules of Civil Procedure are impliedly part of the package through the Court's associated orders. We do not find any fault, therefore, with the District Court's locating within Rule 6(b)(2) yet an additional source of its power to modify the deadlines here. Rule 6(b)(2) provides, in pertinent part:

> When by ... order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may [enlarge the time] at any time in its discretion ... (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect. . . .

Here, the District Court treated the requests to accept late-filed or late-cured proofs of claim as motions to enlarge the time to comply with a court-ordered deadline and was prepared to grant the late claimants relief if they could prove that the "failure to act was the result of excusable neglect" in accordance with Rule 6(b)(2). Treating the claimants' requests in this manner was well within the District Court's discretion. The standard under which the District Court must evaluate such claims is plainly articulated in the Rule, though the particulars of precisely what is meant by "excusable neglect" has been left to the federal courts to parse.

**B. The District Court's Findings of "Excusable Neglect"**

 Cendant further asserts on appeal that even if the "excusable neglect" stan-

---

of beneficiaries provide[s] an additional underpinning for the remedy of class relief with

its origin in equity.").

dard applied here, the District Court erroneously concluded that certain claimants had demonstrated "excusable neglect" for their failure to file claims or to respond to requests to cure timely. The PRIDES Class counters that the District Court properly held that "in the aggregate, the claimants' neglect to strictly adhere to the deadlines ... is excusable." We agree with the PRIDES Class' argument and find that the District Court did not abuse its discretion in this regard.

In *Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court held that the rule authorizing courts to accept late filings where the failure of a party to act is the result of "excusable neglect" contemplates that courts are permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond a party's control. At the outset, the Supreme Court pronounced that the inquiry is essentially equitable, and necessitates considering a situation's totality:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.

*Id.* at 395, 113 S.Ct. 1489.

While "all relevant circumstances" are properly considered, the Supreme Court specifically delineated four factors:

> These include ... the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* In the wake of *Pioneer*, we have imposed a duty of explanation on District Courts when they conduct "excusable neglect" analysis. In *Chemetron Corp. v. Jones*, 72 F.3d 341 (3d Cir.1995), we addressed the Bankruptcy Rule that permits courts to accept late-filed claims when the late-filing was due to "excusable neglect." In *Chemetron* we held that the bankruptcy court's "analysis failed to adequately consider the totality of the circumstances presented." *Id.* at 349. In the case before us now, the District Court discussed the *Pioneer* standard, considered a totality of the circumstances, and appraised each of the four *Pioneer* factors seriatim.[8]

Under the prejudice prong, as already discussed *supra*, the District Court concluded that an "extension of the June 18, 1999, deadline for filing proofs of claim would not change the bargained-for terms of the Stipulation." In addition, the District Court found that the length of the delay, which amounted to a few months, did not involve a "substantial lapse of time." Cendant argues that it will be harmed by the time extension because, in essence, claims that it believed should have been barred under a strict deadline might ultimately be permitted by the District Court through a time extension. Since unclaimed financial obligations from the pool of $341,480,861 will revert to Cendant, it is easy to ascertain Cendant's interest in challenging every claim. We find unavailing for reasons already discussed, however, Cendant's passionate and recurring argument that it bargained to make this fund available only to those claimants who adhered to strict deadlines. We agree with the District Court that Cendant's bargained-for agreement to make available up to $341,000,000+ of Rights remains unchanged with the time extension. As to "impact on judicial proceedings," we properly defer to the District Court's conclusion that "a slight enlargement of time to

---

8. Additionally, the District Court mentioned the three factors we identified in a case predating *Pioneer*, *Dominic v. Hess Oil V.I.*, 841 F.2d at 517 (inadvertence reflecting professional incompetence, excuse incapable of verification, complete lack of diligence), though these are arguably integrated within the fourth *Pioneer* factor, "reason for the delay."

file ... will not unreasonably hamper proceedings before the Court."

The District Court found that the reasons for the delays were satisfactory, though because we find that the District Court's general extension of the cure deadline to September 7, 1999, was not an abuse of discretion, we agree with the PRIDES Class that the District Court need not have scrutinized claims meeting that extended date with the same exactitude as those claims missing even that deadline. Nevertheless, we find the District Court to have acted within its discretion in excusing those claims which it did. Without reviewing each claim independently, we set forth several examples which should suffice; the failure of claimants to receive notice, illness, misrouted mail, intervening company name changes, or short internal mail system delays all seem to us to fall within the ambit of reasons which a District Court, in its discretion, may reasonably accept under "excusable neglect." Finally, while Cendant suggests that the District Court should have rejected many excuses because in those cases the claimants were sophisticated investors or because, in essence, the problem was the claimants' own fault and preventable or foreseeable, we disagree; neglect "is not limited strictly to omissions by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 391, 113 S.Ct. 1489. In permitting the claims it did, the District Court did not abuse its discretion.

### III.

In conclusion, where the parties affirmatively subjected themselves to the Court's jurisdiction by seeking its assistance in administering the settlement and deliberately left the important dates to the Court's discretion without a time-of-the-essence clause, we find that the District Court had the power to modify the terms of the Stipulation originally set by the Court and had the discretion to allow late-filed and late-cured claims. We also find that the District Court did not abuse its

discretion in applying the "excusable neglect" standard to permit the claims it did in this case. Accordingly, we will affirm the decision of the District Court.