[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 11, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-14055

_____

D. C. Docket No. 99-01317-MD-PAS

VALLEY DRUG COMPANY, et al.,

Plaintiffs,

BLUECROSS BLUE SHIELD OF MASSACHUSETTS,
BLUECROSS AND BLUE SHIELD OF NEBRASKA,
EXCELLUS HEALTH PLAN, INC.,
THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,
HORIZON BLUECROSS BLUE SHIELD OF NEW JERSEY,
WELLCHOICE INC., d.b.a. Empire BlueCross BlueShield, Inc.,
WELLPOINT, INC., d.b.a. Anthem, Inc.,

Plaintiffs-Appellants,

versus

GENEVA PHARMACEUTICALS, INC.,
ABBOTT LABORATORIES, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 11, 2008)**

Before ANDERSON and PRYOR, Circuit Judges, and VINING,* District Judge.

PER CURIAM:

The Appellants are seven putative plaintiffs in this class action suit. They challenge the denial of their motion for an enlargement of the deadline to file requests to opt out of the class action settlement. Pursuant to the parties' settlement agreement, the district court set April 11, 2005, as the deadline for receipt of opt-out requests. Appellants missed this deadline by a few hours and moved the court for an enlargement of time under Fed. R. Civ. P. 6(b). The district court denied Appellants' motion. Because the district court erred with respect to its authority to enlarge the deadline, and because the district court's denial order failed to fully consider the factors for excusable neglect stated in Pioneer Investment Services v. Brunswick Associates, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 (1993), we vacate the judgment of the district court.

## I.  FACTS

In February 2005, the parties in the underlying class action suit reached a settlement. The district court approved the notice of settlement on March 8, 2005, and pursuant to the Settlement Agreement ("Agreement"), established April 11,

---

*The Honorable Robert L. Vining, Jr., United States Senior District Judge for the Northern District of Georgia, sitting by designation.

2

2005 as the deadline for receipt of opt-out forms from Third Party Payer class members, including Appellants. The district court's order stated: "TPP members of the IPP classes to submit any Notices of Exclusion *for receipt* on or before April 11, 2005." The document sent to class members expressed the deadline in two different ways. The Request for Exclusion form stated that Third Party Payers wishing to be excluded from the settlement must complete the form and send it "by first-class mail in time to be received on or before April 11, 2005 . . . ." The Notice of Proposed Settlement expressed the opt-out deadline as "[i]n order to be considered timely, it [the opt-out form] must be received on or before April 11, 2005, and mailed by first-class mail . . . ." The claims administrator's deadline for informing defendants of those plaintiffs electing to opt-out was 10:00am on April 12, 2005.

Fifteen plaintiffs who were pursuing similar claims in Illinois state court wished to opt out of the federal settlement. These plaintiffs mailed their opt-out forms and payment data on April 7, 2005. All fifteen forms were mailed at the same time from the same post office. The claims administrator picked up eight forms at 6:00am on April 12, 2005, and marked them as timely received. Seven of those eight forms marked by the administrator as timely belonged to the seven plaintiffs who are the Appellants in this appeal. The other seven opt-out forms

3

arrived later and were marked untimely. When these latter seven plaintiffs (not appellants in this appeal) learned in June 2005 that their opt-outs were untimely, they filed a motion for relief under Fed. R. Civ. P. 6(b). The district court denied the motion and this Court affirmed that decision on appeal in <u>Valley Drug Co. v. Geneva Pharmaceuticals</u>, 179 Fed. Appx. 600 (11th Cir. 2006) (unpublished).[1] The final settlement was approved on July 8, 2005, and included Appellants in the list of opt-outs.

In October 2005, defendants learned that Appellants' opt-out forms had arrived at the post office in West Palm Beach at 4:11am on April 12, 2005. The claims administrator had assumed that any mail picked up early in the morning had been placed in the P.O. box the night before. After reviewing the postal records, the administrator stated that the Appellants' seven opt-out forms were marked timely as a result of this mistaken assumption, but the forms were, in fact, untimely.

On the basis of this new information and the administrator's mistake, defendants filed a Fed. R. Civ. P. 60(b) motion with the district court on October

---

[1]Appellees suggest that Appellants here should be bound by the judgment which was affirmed in this prior appeal. We disagree. These Appellants were not parties to that appeal, and the evaluation of the factors from <u>Pioneer Investment Services v. Brunswick Associates</u>, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 (1993), will be somewhat different in this case. We express no opinion on the extent to which the evaluation of the <u>Pioneer</u> factors in this case will differ from or mirror that in the prior appeal, except to note that the prejudice to Appellees is different.

27, 2005. Defendants asked the court to add Appellants to the list of plaintiffs included in the settlement, based on the mistake regarding the timeliness of receipt of their opt-out forms. Appellants filed a cross-motion, asking for an enlargement of the deadline under Rule 6(b). The court denied Appellants' motion and ruled that the Rule 60(b) motion had merit, but held off on entering an order until this Court had ruled on the initial seven plaintiffs' Rule 6(b) appeal. Once this Court upheld the district court on that appeal, the district court entered an order granting Defendants' motion and withdrew Appellants from the list of opt-outs.

Appellants argue on appeal that the district court abused its discretion in denying their Rule 6(b) motion and including them in the settlement. The district court denied Appellants' Rule 6(b) motion and granted Defendants' Rule 60(b) motion because the court believed that it did not have the authority to modify the parties' negotiated settlement. In the alternative, the court held that even if it did have the authority to extend the opt-out deadline, Appellants had failed to demonstrate excusable neglect. The district court did not elaborate on its conclusion that Appellants had not demonstrated excusable neglect, except to reference the court's order in regard to the earlier group of plaintiffs. This Court reviews decisions under Rule 6(b) and Rule 60(b) for abuse of discretion. Grilli v. Metro. Life Ins. Co., 78 F.3d 1533, 1538 (11th Cir. 1996) (Rule 6(b)); Cheney v.

5

Anchor Glass Container Corp., 71 F.3d 848, 849 n.2 (11th Cir. 1996) (Rule 60(b)).

## II. DISCUSSION

A.      Authority to Modify the Settlement Agreement

Generally, courts may not modify the terms of the parties' voluntary settlement in the class action context.  While Rule 23(e) "wisely requires court approval of the terms of any settlement of a class action[,] . . . [t]he settlement must stand or fall as a whole."  Brooks v. Ga. St. Bd. of Elections, 59 F.3d 1114, 1119, 1120 (11th Cir. 1995).  Courts are not free to modify or delete terms of the parties' negotiated settlement.  Id. at 1120.

However, some of our sister circuits have held that to the extent a term, deadline, or condition is outside of the parties' negotiated agreement and within the court's control, the court may alter it.   In re Agent Orange Product Liab. Litig., 821 F.2d 139, 145 (2nd Cir. 1987) (finding that because the parties' settlement agreement did not mention the confidentiality of discovery materials, the district court had the authority to modify a protective order it had entered); Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.), 233 F.3d 188, 191, 195 (3rd Cir. 2000) (upholding the district court's order allowing class members to cure late proofs of claim because the district court set the deadline and the parties' agreement provided for the cure of deficient claims); see also In re

6

Crazy Eddie Sec. Litig., 906 F. Supp. 840, 844-45 (E.D.N.Y. 1995) (holding that the court could enlarge the time for filing claims because the parties' agreement required the court to set the deadline for filing proofs of claim). Thus, if the court sets a deadline in a class action settlement agreement, the court retains the discretion to alter that deadline. In re Crazy Eddie, 906 F. Supp. at 844-45; In re Cendant, 233 F.3d at 191, 195. For example, in Cendant, the parties left the deadline date for the receipt of proofs of claim in their agreement blank with the expectation that the district court would select a date for them. In re Cendant, 233 F.3d at 191, 193. Because the deadline was court-ordered, and not bargained for, the district court had the authority to extend the deadline under Fed. R. Civ. Pro. 6(b). Id. at 193-195. Similarly, in Crazy Eddie, the court concluded that the deadline for submitting proofs of claim was not "an integral part of the [parties'] bargain" because the date had been set by the court. In re Crazy Eddie, 906 F. Supp. at 844, 845.

District courts considering this issue have found that where the parties actually negotiated the deadline, the court must treat it as a contract term that cannot be altered. Dahingo v. Royal Caribbean Cruises, Ltd., 312 F. Supp. 2d 440, 447, 448; L.P. Sec. Litig. v. Lee (In re ML-Lee Acquisition Fund II), No. CIV.A.94722-JJF, 1999 WL 184135, at *2 (D. Del. March 23, 1999). In Dahingo,

the court refused to extend the filing deadline to allow inclusion of late claims, finding that the deadline was "the subject of negotiation and compromise by counsel," and the court therefore could not disturb it. Dahingo, 312 F. Supp.2d at 447. The ML-Lee court similarly held that to accept late-filed proofs of claim would be equivalent to rewriting the settlement agreement, "a result that substantially modifies the understanding negotiated between Plaintiffs and Defendants." In re ML-Lee, 1999 WL 184135 at *2. Thus, the few courts to consider this issue have concluded that the court's authority to modify a term of the parties' settlement agreement hinges on whether the term was set by the court or bargained for by the parties.

Here, the Settlement Agreement makes clear that the district court had the responsibility to set the relevant aspect of the opt-out deadline in this case. Section I.JJ of the Agreement states: "'TPP Opt-Out Deadline' means the date set by the court as the deadline for Third Party Payer members of the IPP classes to file Notices of Exclusion from the IPP classes, which shall not be later than April 11, 2005." The court's subsequent order set April 11, 2005, as the deadline for receipt of opt-out notices. The order emphasizes "for receipt" in italicized type and with underlining, though the Agreement is silent as to whether April 11, 2005, is a postmark or actual receipt deadline. Additionally, the differences in language

8

regarding the opt-out deadline in the Notice of Proposed Settlement and Request for Exclusion form render the deadline ambiguous. As noted above, the former states that the opt-out form must be received on or before April 11; the latter states that the form must be mailed in time to be received on or before April 11. Whether the deadline was a postmark or receipt deadline is not clear from the parties' negotiated documents. Indeed, the only clarity regarding the deadline is in the district court's order, which emphasized that it was a deadline for actual receipt.

Given the grant of discretion to the district court to set the precise deadline for opt-out forms and the court's own emphasis on "for receipt" in the face of the Agreement's silence, we conclude that the April 11, 2005, deadline for the actual receipt of the opt-out notices was not a negotiated term of the parties' agreement. Rather, the district court set the term and accordingly has the discretion to modify it within the parameters of whether the deadline was actual receipt by April 11, 2005, or postmarked in time to be received by then. The court erred in concluding that it lacked such authority.

B.     Excusable Neglect

With respect to the district court's alternative holding in its February 28, 2006 Order - that these plaintiffs have not satisfied the excusable neglect standard - we conclude that the district court abused its discretion in failing to fully consider

9

the factors set out in <u>Pioneer Investment Services v. Brunswick Associates</u>, 507 U.S. 380, 395, 113 S. Ct. 1489, 1498 (1993).  With respect to the standard for evaluating excusable neglect, the Supreme Court held:

> We conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.  These include, as the court of appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

507 U.S. at 395, 113 S. Ct. at 1498 (footnote omitted).  Although the district court in its February 28, 2006 Order made reference to its July 8, 2005 Order (which did more fully discuss the <u>Pioneer</u> standard), that earlier decision involved seven other Illinois plaintiffs whose situation was somewhat different from the instant plaintiffs.  In any event, we conclude that our review is unduly hampered by the failure of the district court to fully analyze all of the relevant circumstances and equities involved in the situation obtaining with respect to the instant plaintiffs.[2]

---

[2]Moreover, to the extent that the February 28, 2006 Order intended to incorporate that portion of the July 8, 2005 Order that noted that the Illinois plaintiffs "have offered no evidence to support a finding that they acted in 'good faith,'" we note that the instant plaintiffs have in fact offered the affidavit of Hardy Vieux, the lead associate who managed the data collection process. In that affidavit, he avers that attorneys and staff of his firm spent approximately 950 hours between March 7, 2005 (the date of the preliminary class certification), and April 7, 2005 (the date on which the opt-outs were mailed), preparing information requested in the Notice. Although we express no opinion at all on the issue of good faith or lack of good faith, we do observe that this affidavit does appear to be at least some evidence relevant to that issue. The district court on remand should undertake a full discussion of the circumstances relevant to good

10

Accordingly, we vacate the challenged judgment of the district court, and remand the case to the district court for further proceedings not inconsistent with this opinion.

**VACATED AND REMANDED.**

---

faith or the lack thereof, as well as a full discussion of the other relevant circumstances and equities pursuant to the Pioneer standard.