■ ARTHUR J. GENERAS et al., Appellants-Respondents, v HOTEL DES ARTISTES, INC., Respondent-Appellant.—Order of the Supreme Court, New York County (Louis Grossman, J.), entered August 7, 1985, which denied plaintiffs' motion for a

preliminary injunction and defendant's cross motion for an order dismissing the complaint, is unanimously modified, on the law, to the extent of granting defendant's cross motion, and otherwise affirmed, with costs and disbursements.

Plaintiffs, Arthur J. Generas and his wife Cheryl Generas, are shareholders in defendant Hotel des Artistes, Inc., a cooperative housing corporation.

In January 1985, Hotel des Artistes published a notice of sale for two apartments. The notice solicited bids of no less than $555,000 from shareholders, sublessees and selected referrals. It further specified:

"Bids will be opened on February 28, 1985, and closing of title will take place within thirty (30) days of the opening of bids, at which time the full balance of the purchase price must be paid in cash or certified or bank check. Bidder agrees that immediately on request bidder shall execute a formal contract on Blumberg Form W123.

"CAVEAT: This offer may be withdrawn at any time * * * Hotel des Artistes, Inc. will not pay any brokerage commissions in connection with this transaction and the successful Purchaser will be required to indemnify and hold harmless Hotel des Artistes, Inc. with respect to any potential brokerage commissions."

At the time, Arthur Generas was a member of the board of directors and was serving as treasurer of the corporation. He and his wife, Cheryl, bid as follows:

"$5,000 above any other offer from the minimum, stipulated upset price of $555,000 to a maximum offer of $590,000 * * *

"This offer is valid through [F]riday, March 15, 1985 and contingent upon us obtaining any/all necessary financing. In the event that we are unable to obtain any/all necessary financing, our check in the amount of $59,000 representing 10% of our maximum bid shall be returned to us."
The bid was tendered in accordance with the procedure set forth in the notice.

The Generas' bid was accepted as the highest bid at the February 28, 1985 board of directors meeting. The minutes reflect that although the Generases' bid was made subject to their obtaining suitable financing, it was the only bid which included both apartments.

At the March 21st meeting, the board of directors set a June 28, 1985 closing date for the sale. The board minutes of the meeting state: "The contract is to be subject to Mr. and Mrs. Generas obtaining an institutional loan of not more than

$250,000.00 and subject to their selling and closing on their present apartment on or before June 28, 1985. If they do not close on their apartment on or before June 28, 1985, they must either cancel the contract for the purchase of apartments 510 and 5W or make it a firm contract no longer subject to the sale of their present apartment. If closing on the sale of apartments 510 and 5W is delayed beyond June 28, 1985, other than by reason of the Corporation's inability to close, the Purchasers are to pay to the Corporation an amount equal to the interest paid by the Corporation on the $125,000.00 Barclays loan from June 28, 1985, to the date of closing, plus maintenance on apartments 510 and 5W from June 28, 1985, to the date of closing, plus interest on $250,000.00 at the rate of 7% per annum from June 28, 1985, to the date of closing. The contract for the purchase of apartments 510 and 5W is to be non-assignable by the Purchasers."

By letter dated March 27, 1985, the corporation forwarded to the Generases a "copy of the proposed contract". The couple executed the contract, but only after altering its terms, and then returned it to the corporation accompanied by a check for $56,510.50, representing 10% of the purchase price. The check was deposited by the corporation. However, the board thereafter rejected the terms added by plaintiffs and withdrew the offer.

On April 18, 1985, at the annual shareholders' meeting, the bidding procedure for this transaction was challenged. After the newly elected board undertook to investigate the matter, the Generases commenced the instant action, seeking specific performance of the purported contract to sell the apartments and damages.

Plaintiffs thereafter moved for a preliminary injunction enjoining the corporation from transferring the shares allocated to the apartments for the pendency of the action.

Defendant opposed the application and cross-moved for dismissal of the complaint on the grounds of (1) failure to state a cause of action and (2) the existence of a defense based upon documentary evidence.

Special Term denied the motion and the cross motion. The court found that plaintiffs had not demonstrated the likelihood of success on the merits, irreparable injury or a balancing of the equities in their favor. We agree with that determination. However, Special Term should have granted defendant's cross motion to dismiss the complaint.

The writings relied upon by the plaintiffs do not establish an enforceable agreement since the Statute of Frauds was not satisfied and there was no meeting of the minds regarding material elements of the transaction.

This court has repeatedly held that the Statute of Frauds applies to the sale of stock in a housing cooperative (*Pollard v Meyer*, 61 AD2d 766; *Rosner v 80 CPW Apts. Corp.*, 73 AD2d 39, 41; *Lebowitz v Mingus*, 100 AD2d 816).

In order to satisfy the Statute of Frauds (General Obligations Law § 5-703 [2]), a memorandum, signed by the party to be charged, must designate the parties, identify and describe the subject matter and state all of the essential terms of a complete agreement. (*See, Willmott v Giarraputo*, 5 NY2d 250, 253-254.)

No contract for the sale of real property can be created when a material element of the contemplated bargain has been left for further negotiations (*Blakey v McMurray*, 110 AD2d 998; *Sheehan v Culotta*, 99 AD2d 544; *Willmott v Giarraputo, supra*).

As set forth above, the exchanges between the parties merely consisted of successive counteroffers which culminated in defendant's withdrawal of the offer pursuant to the terms of the notice of sale.

The plaintiffs' bid was accepted at the February 28th board meeting subject to their obtaining "acceptable financing". The requirement of "acceptable" financing unambiguously indicated that further negotiations would be necessary, since some types of financing would not satisfy the board requirements regarding the liquidity of shareholders. Thus, no contract was created as a result of this meeting.

At the March 21st board meeting, plaintiffs introduced terms (1) extending the closing date to three months from the date specified in the notice of sale and (2) conditioning the transaction upon their ability to sell their present apartment. Defendant accepted these changes on the condition that plaintiffs agree to pay the interest from June 28th on a loan the coop obtained to meet expenses in part connected with the inoccupancy of the apartments. No enforceable agreement existed after that meeting since the financing had not been resolved and the plaintiffs had not accepted the new terms.

Following the meeting, the corporation sent a second "proposed contract" to plaintiffs. The document executed by the plaintiffs and returned to defendant altered the terms of defendant's proposed contract in three ways. First, plaintiffs

altered the term governing the payment of interest on the 10% down payment. Second, they listed specific fixtures to be included in the sale. Since some of the fixtures had been previously removed by the estate of the prior occupant, it appears that this term was subject to further negotiation. Third, they added a clarifying qualification to the paragraph governing default. Contrary to defendant's assertion, however, this addition does not affect the brokerage commission term and it does not otherwise appear to alter the contract.

Given the corporation's characterization of this document as a "proposed contract", the not-yet-resolved financing arrangements and the incomplete fixture list, it cannot be said that an enforceable agreement existed between the parties.

Defendant's deposit of the down payment check did not constitute assent to plaintiffs' terms. There was discussion between the parties as to the terms of the transaction until June 3rd, when defendant withdrew the offer to sell. In addition, as noted before, the transaction is governed by the Statute of Frauds, the requirements of which were not met. Concur—Kupferman, J. P., Sullivan, Carro, Asch and Fein, JJ.