PETER SEITZMAN et al., Appellants, v HUDSON RIVER ASSOCIATES, Respondent.

First Department, March 24, 1987

## APPEARANCES OF COUNSEL

*Jay C. Lipner* of counsel *(Silverstein Langer Lipner & Newburgh,* attorneys), for appellants.

*Lee D. Unterman* of counsel *(Whitman & Ransom,* attorneys), for respondent.

*Lisa Bloom* of counsel; *Meister, Leventhal & Slade* and *Paula L. Ettelbrick* for Lambda Legal Defense and Education Fund, *amicus curiae.*

## OPINION OF THE COURT

Asch, J.

Plaintiffs are medical doctors who reside and own apartments at 137 Riverside Drive in Manhattan, a cooperative apartment building owned by 137 Riverside Owners, Inc. Plaintiff Seitzman is an internist, plaintiff Minola is a psychiatrist. Each of them currently practices elsewhere in Manhattan. Defendant Hudson River Associates is the sponsor and selling agent of the cooperative corporation. It controls the board of directors of that organization.

In August of 1985, the defendant was using the ground-floor apartment 1A at the building as its sales office. Plaintiffs sought to purchase it for use as a medical office and the parties entered into contract negotiations. Since apartment 1A was listed in both the certificate of occupancy and the offering plan as a residential unit, the proprietary lease and the offering plan had to be amended to allow use of the apartment as a medical office. An amended certificate of occupancy would also have to be filed with the New York City Department of Buildings. The defendant agreed to amend the offering plan and proprietary lease to allow the use of 1A as a medical office. The plaintiffs assumed responsibility for filing the necessary plans and for amending the certificate of occupancy. The contract between the parties further required defendant to "cooperate" with plaintiffs in obtaining the amended certificate of occupancy.

The contract was entered into on October 16, 1985. A

closing date set for July 1, 1986. It appears that defendant was so anxious to consummate the agreement that, in late March, Alexander Vik, a partner in defendant and president of the board of directors of the cooperative corporation, telephoned plaintiff Seitzman, a fellow member of the board, to ask if the closing date could be advanced to May 1986. Before plaintiffs could secure an amendment to the certificate of occupancy, Vik learned for the first time that Seitzman treats patients who have Acquired Immune Deficiency Syndrome (AIDS). Thereafter, the loan appraiser from Citibank was denied access to the premises, defendant failed to have the proprietary lease amended and plaintiffs were unable to obtain an amendment to the certificate of occupancy. As a consequence, plaintiffs were unable to get their loan, leading to the attempted cancellation of the agreement by defendant.

Alleging a breach of contract, plaintiffs brought this action for specific performance, seeking interim injunctive relief. The Supreme Court denied that motion, stating that "movant has not met the three-pronged test for such relief". We disagree.

The three prerequisites for obtaining a preliminary injunction are likelihood of success on the merits, irreparable injury in the absence of such injunctive relief, and balancing of the equities (*Albini v Solork Assocs.*, 37 AD2d 835). We consider these factors seriatim.

First, it appears likely that plaintiffs will succeed on the merits in this action. Defendant contends that plaintiff failed to satisfy a condition precedent of the contract, i.e., obtaining an amended certificate of occupancy. However, unknown to plaintiffs, at the critical times herein defendant already had an application pending with the Department of Buildings for an amended certificate of occupancy to permit unrelated roof repairs. The parties agree that there is an unwritten rule at the Department of Buildings that no application for an amended certificate will be entertained while another is pending. Plaintiffs offered to resolve this problem by having the pending application for an amended certificate itself amended to cover both the roof repairs and the conversion of apartment 1A to a medical office. Having contractually agreed to cooperate in obtaining an amended certificate of occupancy, defendant nevertheless rejected this solution, rendering compliance by plaintiffs with this condition impossible without judicial intervention.

The evidence submitted supports plaintiffs' contention that

once Vik learned that AIDS patients were part of Seitzman's practice, defendant did an abrupt about-face. Instead of desiring to close early, it now did not want to close at all and refused to cooperate in allowing plaintiffs to file plans to amend the certificate of occupancy. Further, even as late as its opposition to plaintiffs' motion, defendant alleged plaintiffs procured the contract through fraud and deceit by failing to disclose that they treat AIDS patients. It further accused plaintiffs of intending to operate an "AIDS clinic" in disregard of "the public's present concern with the so-called AIDS crisis".

This only serves to strengthen plaintiffs' contention that the default by defendant was motivated by fear of AIDS and that defendant acted in bad faith to prevent plaintiffs from amending the certificate of occupancy and, therefore, complying with the contract. Although we decide this issue solely in the context of whether plaintiffs have made a sufficient showing of a likelihood of success at this time, it appears that defendant's conduct violated its implied covenant of good faith and fair dealing (see, Van Valkenburgh, Nooger & Neville v Hayden Publ. Co., 30 NY2d 34, 45).

Irreparable injury absent a grant of injunctive relief has also been shown by plaintiffs. Paragraph 15 of the agreement provides that "[p]urchaser shall have such remedies as he is entitled to at law or in equity, including but not limited to specific performance because the Apartment and possession thereof cannot be duplicated." Although specific performance is not an exclusive remedy under the contract, apartment 1A is located in the same building where both of plaintiffs live and own residential apartments. If plaintiffs are relegated to monetary damages by denial of injunctive relief, they will be prevented from having an office in the same building in which they live—not a minor consideration, in Manhattan.

Finally, a balancing of the equities favors the plaintiffs herein. Although an injunction will prevent defendant from reaping an immediate return by selling the apartment to a third party, had it not breached its implied covenant of good faith, the closing would have taken place on July 1, 1986, and defendant would have already received its compensation.

Further, when the court balances the equities in deciding upon injunctive relief, it must consider the "enormous public interests involved" (see, Barney v City of New York, 83 App Div 237, 241). Clearly, if plaintiffs are prevented from carrying

on a medical practice in this building, which includes the treatment of patients suffering from AIDS, arguably the group most in need of medical treatment, damage will be done not only to the health care interest of New York and its people, but also the public policy of this State. Executive Law § 296 (5) (b) (2) makes it unlawful to discriminate by refusing to sell commercial space to anyone because those premises will be used, *inter alia,* in the furnishing of facilities or services to the disabled.

Accordingly, the order of the Supreme Court, New York County (Harold Baer, Jr., J.), entered September 30, 1986, denying plaintiffs' motion for a preliminary injunction to prevent defendant from terminating a contract for the sale of a cooperative apartment or from selling the apartment to any third party, should be reversed, on the law and facts, and the motion granted, with costs and disbursements payable by defendant, and a bond to be posted by plaintiffs.

KUPFERMAN, J. P., ROSS, KASSAL and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on September 30, 1986, unanimously reversed, on the law and facts, the motion for a preliminary injunction granted. Plaintiffs-appellants shall recover of defendant-respondent $50 costs and disbursements of this appeal, and a bond is to be posted by plaintiffs.