PAMELA SABIN-GOLDBERG et al., Appellants, v MYLES J. HORN, Respondent

Plaintiff Pamela Sabin-Goldberg was a rent-regulated tenant in apartment 14A owned by defendant Myles J. Horn. She contracted to buy it, intending to resell it to one Klinsky for a substantial profit. There is a dispute as to whether the eventual breach of the sale contract by defendant was willful, but,

otherwise, the facts are essentially uncontested. The purchase price in the contract with defendant was $336,150. The plaintiffs, thereafter, entered into their agreement with Klinsky who agreed to pay $580,000 for apartment 14A.

Initially, while we dismiss the appeal from the order of the IAS court denying plaintiffs' *in limine* motion as subsumed in the final judgment, we find that the court properly denied that motion to introduce evidence of a previous settlement offer. Offers to settle or compromise are not generally admissible (Richardson, Evidence § 225, at 200-202 [Prince 10th ed]). Contrary to plaintiffs' contention, defendant Horn, was, at the time of the offer, under no obligation to perform the acts that he offered to perform upon payment of $30,000.

The IAS court instructed the jury that it could award the plaintiffs lost profits only if defendant Horn's breach was willful. The jury rendered its verdict on written interrogatories, finding that Horn had breached the contract for the sale of the apartment, but that the breach was not willful. In the final judgment, plaintiffs were awarded their deposit of $33,615, plus interest, attorney fees and costs and disbursements for a total recovery of $48,748.70.

The IAS court erred in characterizing this action as one concerning the sale of real estate, and then applying the rule that willfulness, fraud, or bad faith are necessary for a claim for damages, based upon a breach of a real estate contract, rather than treating the agreement as one for the sale of personalty. "This contract, in reality a sale of securities in the cooperative corporation, is governed by the Uniform Commercial Code, and * * * damages thereunder are to be determined by using the measure of 'the difference between the market price at the time when the buyer learned of the breach and the contract price'. (Uniform Commercial Code, § 2-713, subd [1]; see, also, *Simon v Electrospace Corp.,* 28 NY2d 136, 145; *Parker v Hoppe,* 257 NY 333, 341.)" *(Weiss v Karch,* 62 NY2d 849, 850.)

There are cases in which a cooperative apartment is treated pursuant to real property law *(see, e.g., Generas v Hotel des Artistes,* 117 AD2d 563, *lv denied* 68 NY2d 606; *Chiang v Chang,* 137 AD2d 371, 375) where the focus is essentially on the home ownership nature of the cooperative. However, the Court of Appeals has repeatedly held that the valuation of shares in a cooperative apartment is governed by UCC 2-713 and is treated as personal property. *(Friedman v Sommer,* 63 NY2d 788; *Weiss v Karch, supra.)*

Defendant contends that plaintiffs have not preserved this issue by a specific objection to the charge treating the sale as one of realty. However, plaintiffs did except to the charge "to the extent that it said that Mr. Horn's breach would have to have been willful." This objection directed the court's attention to the precise mistake made in the instruction, giving it an opportunity to reconsider and correct the error. Further, earlier in the trial, plaintiffs had pointed out to the court that it was wrong to categorize the transaction as one for realty, noting that it was not a "real estate contract", but the "sale of personalty". These remarks, coupled with the objection to the charge concerning willfulness, were enough to adequately apprise the court of the nature of the objection and preserve the issue for appellate review. *(Williams v City of New York,* 101 AD2d 835, 836.)

Defendant further claims that since plaintiffs argued at the trial that "time was of the essence", they proceeded as though the subject matter was realty. However, time can be specified to be of the essence in contracts for the sale of personalty as well as those for the sale of realty *(see, Lusker v Tannen,* 90 AD2d 118, 121; *Mercantile Natl. Bank v Heinze,* 75 Misc 551, 562).

Finally, defendant argues that plaintiffs failed to satisfy their burden of proving lost profits. Pursuant to UCC 2-713 (1), the measure of damages upon a breach is "the difference between the market price at the time when the buyer learned of the breach and the contract price". It is undisputed that the contract price was $336,150. The only evidence of the market price was the price to be paid by Klinsky—$580,000. Indeed, the defendant's expert submitted an appraisal which suggested the value of the apartment was $625,000. Defendant contends, on the basis of his expert's testimony at trial, that the value of the apartment is decreased because it was occupied by a rent-stabilized tenant. This would probably be the case with the defendant as seller to a third party and plaintiffs remaining as rent-stabilized tenants. However, the seller here would have been the plaintiffs upon their purchase of the apartment shares from defendant, and they obviously could transfer the apartment unoccupied.

The uncontroverted proof at trial established that the plaintiffs lost $243,850 when defendant's breach foreclosed their opportunity to buy the apartment from defendant for $336,150 and resell it to Klinsky for $580,000. That amount must be reduced by the expenses saved by the plaintiffs because of the breach, i.e., a brokerage fee of $30,100 and a tax of $3,361.50

for a total net lost profit of $210,388.50, and we modify the judgment accordingly. Concur—Sullivan, J. P., Milonas, Asch, Kassal and Smith, JJ.