[891 NYS2d 606]

Joseph Lezell et al., Plaintiffs, v David Forde, Defendant.

Supreme Court, Kings County, October 15, 2009

APPEARANCES OF COUNSEL

*Yerachmial Kuzecki* for plaintiffs. *Thomas & Spikes* (*James Thomas* of counsel), for defendant.

## OPINION OF THE COURT

JACK M. BATTAGLIA, J.

In their verified complaint, plaintiffs Joseph Lezell and

Yachiel Michael Jaffe purport to allege five causes of action, including a cause of action for specific performance of a contract of sale—cooperative apartment dated "January 2007" with respect to 125 shares of 446 Kingston Owners Corp. and a proprietary lease for an apartment designated F1 at 446 Kingston Avenue, Brooklyn. Defendant David Forde has answered, denying most of the allegations of the verified complaint, and asserting eight affirmative defenses, including the lack of mental capacity to contract when he signed the contract of sale.

With this motion, brought on by notice of motion that fails to specify the grounds for any of the relief sought (see CPLR 2214 [a]), plaintiffs seek an order: "[b]arring and prohibiting Defendant . . . from disposing, conveying, mortgaging or otherwise encumbering the real property known as 446 Kingston Avenue, Unit F1 . . . , pending full and complete adjudication of this matter," presumably pursuant to CPLR 6301; "[g]ranting Plaintiffs' motion for summary judgment directing Defendant . . . to convey the premises pursuant to a contract of sale dated January 4, 2007, for the premises," presumably pursuant to CPLR 3212; and "amending the caption of the action so that Plaintiff Yosef Baruch Lezell's—improperly named herein as Joseph Lezell—name is changed to reflect his correct legal . . . name," presumably pursuant to CPLR 3025.

Addressing these requests for relief in reverse order, the court is unaware of any provision of the CPLR or Uniform Rules for Supreme Court and County Court (see 22 NYCRR part 202) that provides for amendment of a caption. Rather, the designation of the parties is determined by the allegations of the complaint, which may be amended pursuant to CPLR 3025. The distinction is not merely technical or academic, particularly here where the claim is based upon a written contract that designates the contracting parties. A motion to amend a pleading must be accompanied by the proposed amended pleading. (See Chang v First Am. Title Ins. Co. of N.Y., 20 AD3d 502 [2d Dept 2005]; Haller v Lopane, 305 AD2d 370, 372 [2d Dept 2003].) A proposed amended summons and complaint are absent here, and the motion must, therefore, be denied to the extent that it seeks amendment.

A motion for summary judgment must be accompanied by a complete copy of the pleadings. (See CPLR 3212 [b]; Sendor v Chervin, 51 AD3d 1003, 1003 [2d Dept 2008]; Wider v Heller, 24 AD3d 433, 434 [2d Dept 2005].) Here, the copy of the verified complaint that is included with the papers is obviously incom-

plete, omitting statements of the alleged first, second, and third causes of action. Again, the error is not merely technical or academic; plaintiffs seek summary judgment on their claim for specific performance, which apparently is the subject of their first cause of action.

Plaintiffs note, moreover, that by order dated March 6, 2008 the Honorable Sylvia Hinds-Radix denied their prior motion for "specific performance of that certain Contract of Sale dated January 4, 2007 affecting the property known as 446 Kingston Avenue, Cooperative Unit F1." (Notice of cross motion dated Feb. 27, 2008.) Plaintiffs do not designate the current motion as seeking leave to reargue or renew, or both. (*See* CPLR 2221 [d], [e], [f].) Nor do they otherwise demonstrate grounds for consideration as such, or explain why the denial of the prior motion should not be given "law of the case" effect (*see People v Evans*, 94 NY2d 499, 503-504 [2000]).

More substantively, plaintiffs fail to include with their papers a copy of the proprietary lease that they ask be transferred to them, together with the 125 shares of 446 Kingston Owners Corp. "The ownership interest of a tenant-shareholder in a cooperative apartment is *sui generis*," and "[t]he leasehold and shareholding are inseparable." (*Matter of State Tax Commn. v Shor*, 43 NY2d 151, 154 [1977].) Particularly without the proprietary lease, the court cannot determine whether 446 Kingston Owners Corp. is a necessary party on plaintiffs' claim for specific performance. (*See* CPLR 1001 [a], [b].)

Plaintiffs' motion must, therefore, be denied to the extent that it seeks summary judgment for specific performance.

■ CPLR 6301 specifies the actions in which a preliminary injunction may be granted:

> "A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, or in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff."

With rare exceptions, a court's authority to grant preliminary

injunctive relief is limited to the two situations specified in the statute. (*See Uniformed Firefighters Assn. of Greater N.Y. v City of New York*, 79 NY2d 236, 239-240 [1992].) Here, there is no prayer for relief in the verified complaint for a permanent injunction in any way barring defendant from dealing with his interest in the cooperative apartment, and, therefore, the second situation described in the statute is inapposite.

Plaintiffs may obtain preliminary injunctive relief if "it appears that [defendant] threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of [plaintiffs'] rights respecting the subject matter of the action" (*see* CPLR 6103), namely, the shares or the proprietary lease, or both, relating to cooperative apartment F1 at 446 Kingston Avenue. Plaintiffs must establish these "[g]rounds for preliminary injunction," as they are designated in the heading to CPLR 6301, by affidavit or other evidence (*see* CPLR 6312 [a]).

Plaintiffs must also meet the standards for the granting of preliminary injunctive relief. "The party seeking a preliminary injunction must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor." (*Nobu Next Door, LLC v Fine Arts Hous., Inc.*, 4 NY3d 839, 840 [2005]; *see also Ricca v Ouzounian*, 51 AD3d 997, 998 [2d Dept 2008].) Specifically, these standards have been applied in an action for specific performance of a contract for the sale of real property where the plaintiffs sought a preliminary injunction "prohibiting the defendants from conveying or taking any other action with respect to the subject property which would be adverse to the plaintiffs' interest therein" (*see Gresser v Princi*, 128 AD2d 752, 752 [2d Dept 1987]; *see also Vincent v Seaman*, 152 AD2d 841, 842-843 [3d Dept 1989]); and to an "action concern[ing] the ownership of a cooperative apartment" where the plaintiff sought a preliminary injunction "enjoining defendant from transferring the cooperative shares in the apartment" (*see Societe Anonyme Belge D'Exploitation De La Nav. Aerienne [Sabena] v Feller*, 112 AD2d 837, 837 [1st Dept 1985]).

The court notes, first, that, because the preliminary relief requested would only affect defendant Forde, the absence from the action of 446 Kingston Owners Corp. at this stage would not preclude the relief, even if its presence would be required "if complete relief is to be accorded" by judgment or it "might be inequitably affected by a judgment" (*see* CPLR 1001 [a]).

According to plaintiffs' respective affidavits, and the verified complaint verified by each of them (*see* CPLR 105 [u]), plaintiffs

and defendant Forde executed the contract of sale—cooperative apartment on or about January 4, 2007, calling for the purchase and sale of unit F1 for a total price of $62,000, with a $2,000 deposit paid and collected; the date for the "closing" on transfer of ownership of the related 125 shares and proprietary lease was specified as March 1, 2007, but shortly before that date defendant's attorney advised plaintiffs' attorney that defendant would not perform the contract; plaintiffs' attorney delivered two "time of the essence" letters, specifying March 29, 2007 as the new closing date; and although plaintiffs were ready, willing, and able to perform the contract, and proceed with the closing, defendant failed to appear.

Plaintiffs' initial burden is to establish that defendant "threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of [their] rights respecting the subject of the action." (*See* CPLR 6301.) "Injunctive relief should be addressed only to acts which are 'threatened and imminent.' " (*1130 President St. Corp. v Bolton Realty Corp.*, 300 NY 63, 69 [1949], quoting *People v Canal Bd.*, 55 NY 390, 395 [1874]; *see also Matter of Board of Co-op. Educ. Servs. of Nassau County v Gaynor*, 33 AD2d 701, 702 [2d Dept 1969].) "Apprehensions will not qualify as irreparable injury or justify the issuance of a preliminary injunction." (*Eldre Components v Kliman*, 47 Misc 2d 463, 464 [Sup Ct, Monroe County 1965].)

Plaintiffs do not allege any additional specific facts that address defendant's intention with respect to the cooperative apartment. Where, however, an action seeks specific performance of a contract for the sale of property, real or personal, the contract is clear evidence of the owner's intention to sell, and that intention should be presumed to continue unless and until there is evidence to the contrary. After all, the owner's intent is uniquely within the owner's knowledge, may not be advertised to the plaintiff, or otherwise become manifest until it is too late. At least prima facie the contract should be sufficient to establish grounds under CPLR 6301. The total circumstances can be assessed on the application of the standards for issuance of a preliminary injunction.

Here, defendant submitted no affidavit in opposition to plaintiffs' motion. In an affidavit submitted in support of his own prior motion for leave to serve a late answer, defendant asserted that the sale of the apartment is intended to supplement his limited income, and that upon the sale he "would remove to Barbados to the home of a family member." (Affidavit of David

Forde, dated Jan. 25, 2008, ¶ 4.) There is nothing in the record to suggest that defendant's intention has changed.

Having sustained, therefore, their burden on "grounds," plaintiffs must satisfy the standards for preliminary injunctive relief, beginning with a showing on the merits of their claim for specific performance. Although the verified complaint asserts other causes of action, their motion proceeds on the claim for specific performance. (Affirmation in support of motion ¶¶ 39-43.)

"To sustain its burden of demonstrating a likelihood of success on the merits, the movant must demonstrate a clear right to relief which is plain from the undisputed facts." (*Matter of Related Props., Inc. v Town Bd. of Town/Vil. of Harrison*, 22 AD3d 587, 590 [2d Dept 2005].) "Where the facts are in sharp dispute, a temporary injunction will not be granted." (*Id.*) But, "[p]rovided that the elements required for the issuance of a preliminary injunction are demonstrated in the plaintiff's papers, the presentation by the defendant of evidence sufficient to raise an issue of fact as to any of such elements shall not in itself be grounds for denial of the motion." (CPLR 6312 [c].)

> "In order to obtain the remedy of specific performance, 'the *complaint* must show: (1) the making of the contract and its terms, including a description of the subject matter; (2) that the plaintiff is ready, willing, and able to perform the contract and has fulfilled all of plaintiff's duties to date; (3) that it is within defendant's power to perform (as, in the case of specific performance of a real estate purchase agreement, a plaintiff should allege that defendant held title to the realty); and (4) that there is no adequate remedy at law (an element that need not be pled where the contract is for the sale of real property).' " (*Delisi v Mastros*, 5 Misc 3d 1024[A], 2004 NY Slip Op 51524[U], *2 [Sup Ct, Queens County 2004], quoting 96 NY Jur 2d, Specific Performance § 69.)

In support of their assertion that they were ready, willing, and able to perform the contract, including that they had the "financial capacity to purchase the subject property" (*see Dairo v Rockaway Blvd. Props., LLC*, 44 AD3d 602, 602 [2d Dept 2007]), plaintiffs submit a copy of a letter dated June 27, 2007 on the letterhead of 446 Kingston Owners Corp., stating that "the Board of Directors of 446 Kingston Owners Corp. approved the transfer of [apartment F1] to Yoseff Lezell and Yachiel Mi-

chael Jaffe in February 2007," and that "[t]he notification letter was sent . . . on March 26, 2007"; a home equity line of credit statement dated May 30, 2007 from USAA Federal Savings Bank to Yoseff Lezell, showing available credit of $124,995.95; and a copy of a statement from JP Morgan Chase Bank, covering the period December 28, 2008 through January 28, 2009, showing a total balance of $79,460.24.

The letter advising of Board of Directors' approval of the transfer evidences satisfaction of a condition to transfer found in the contract of sale. (*See* contract of sale—cooperative apartment ¶ 6; *Wylan v Pandozy*, 22 AD3d 385, 385 [1st Dept 2005].) The home equity line of credit, in an amount approximately double the total purchase price specified in the contract, evidences plaintiffs' financial ability to complete the transfer.

Specific performance is an equitable remedy (*see Yu Han Young v Chiu*, 49 AD3d 535, 536 [2d Dept 2008]), and so the requirement is that there be no adequate remedy at law for it to be ordered. Satisfaction of the requirement is, in effect, presumed when real property is the subject of the contract. "The pleading itself is sufficient to show that the plaintiff has no adequate remedy, or not one, at least, which may be full, adequate and perfect." (*Wasserman v Manson*, 225 App Div 342, 342-343 [1st Dept 1929].) "[A]s to contracts pertaining to personal property," however,

> "[t]he rule is that . . . a party should be confined to his action for damages, unless it appears that he is entitled to the thing contracted for in specie, which to him has some special value and which he cannot readily obtain in the market, or in cases where it is apparent that compensation in damages would not furnish a complete and adequate remedy." (*See Butler v Wright*, 186 NY 259, 261-262 [1906].)

Specific performance of a contract for the purchase and sale of stock was ordered where the stock "had never been listed on any exchange or had any quoted value or any definite market price or any certain value capable of exact ascertainment" and "the defendant was the owner of at least ninety-two per cent of the stock and controlled the balance." (*See id.* at 261; *see also Center v Hampton Affiliates*, 66 NY2d 782, 786 [1985]; *Haymarket LLC v D.G. Jewellery of Canada*, 290 AD2d 318, 319 [1st Dept 2002] ["trading in defendant's stock was so thin that plaintiff would be unable to purchase the number of shares to which it is entitled on the open market, and nearly half of the

outstanding shares were held by insiders or members of their families"].)

Similarly, "while specific performance is available in appropriate circumstances for the breach of a commercial or residential lease, this equitable remedy is not awarded as a matter of course to enforce real property leases." (*See Straisa Realty Corp. v Woodbury Assoc.*, 154 AD2d 453, 454 [2d Dept 1989]; *see also Dlugosz v O'Brien*, 36 AD3d 1035, 1037 [3d Dept 2007] ["specific performance of a lease can only be awarded upon a showing of uniqueness"].) "The word 'uniqueness' is not . . . a magic door to specific performance." (*Van Wagner Adv. Corp. v S & M Enters.*, 67 NY2d 186, 192 [1986].) "A distinction must be drawn between physical difference and economic interchange-ability." (*Id.*) "The point at which breach of a contract will be redressable by specific performance thus must lie not in any inherent physical uniqueness of the property but instead in the uncertainty of valuing it." (*See id.* at 193.)

Where specific performance of a lease is sought, the distinction between physical difference and economic interchange-ability may not always be evident. (*Compare South Amherst, Ltd. v H.B. Singer, LLC*, 13 AD3d 515, 517 [2d Dept 2004] *and Workbench, Inc. v Syblin Realty Corp.*, 140 AD2d 693, 697 [2d Dept 1988], *with Straisa Realty Corp. v Woodbury Assoc.*, 154 AD2d at 454-455.)

The question is whether, for purposes of an action for specific performance, the ownership interest in a cooperative apartment, comprised of shares of the corporate owner of the property and a long-term proprietary lease, should be treated as real property, requiring no showing as to an adequate remedy at law, or "irreparable harm" for purposes of preliminary injunctive relief (*see Vincent v Seaman*, 152 AD2d 841, 844 [1989]), or should be treated as personal property, requiring a showing of "uniqueness," however conceived. In other words, should the whole be found greater than the sum of its parts?

> "The ownership interest of a tenant-shareholder in a co-operative apartment is *sui generis*. . . .
>
> "The growth of co-operative ownership of apartment buildings, . . . especially in New York City, has created legal problems not resolved by uncritical resort either to the rubrics governing real property or those governing personal property. . . .
>
> "Neither the stock certificate nor the lease, insepar-ably joined, can appropriately be viewed or valued

in isolation from the other. Nor may a dynamic jurisprudence ignore the manner in which economic affairs are conducted or the perception that the members of society have in conducting their affairs." (*Matter of State Tax Commn. v Shor*, 43 NY2d 151, 154, 156-157 [1977].)

As a result, "stock in a residential cooperative corporation with its appurtenant proprietary lease is subject to various characterizations as realty or personalty depending upon the purpose of the characterization." (*Sansol Indus. v 345 E. 56th St. Owners*, 159 Misc 2d 822, 824 [Sup Ct, NY County 1993, Crane, J.]; *see also Newman v Valmar Elec. Co.*, 9 Misc 3d 450, 452-453 [Sup Ct, NY County 2005].)

Specific performance and related preliminary injunctive relief are available remedies, in the appropriate case, for the breach or threatened breach of a contract for the purchase and sale of a cooperative apartment. (*See Robins v Noveck*, 63 NY2d 833, 834 [1984]; *Weisner v 791 Park Ave. Corp.*, 6 NY2d 426, 434 [1959]; *Mack-Lowe v Picault-Cadet*, 33 AD3d 504, 504 [1st Dept 2006]; *Wylan v Pandozy*, 22 AD3d at 385; *Harper v Sealy*, 6 AD3d 391, 391 [2d Dept 2004]; *Luby v Babad*, 166 AD3d 391, 391 [1st Dept 1990]; *Sanchez v Sanchez*, 150 AD2d 439, 439 [2d Dept 1989]; *Nassau v Associates 66*, 149 AD2d 489, 489-490 [2d Dept 1989]; *Seitzman v Hudson Riv. Assoc.*, 126 AD2d 211, 213-215 [1st Dept 1987]; *O'Connell v Clear Holding Co.*, 126 AD2d 530, 530 [2d Dept 1987].) For the most part, however, the decisions do not address the "adequate remedy at law" or "irreparable injury" requirements for specific performance and related injunctive relief.

An exception is *Seitzman v Hudson Riv. Assoc.* (126 AD2d 211 [1987]), in which the Appellate Division, First Department, upheld a preliminary injunction in an action for specific performance, finding irreparable injury in part by reason of a provision in the contract that "[purchaser] shall have such remedies as he is entitled to at law or on equity, including but not limited to specific performance because the Apartment and possession thereof cannot be duplicated" (*see id.* at 214). But the court also found that "[i]f plaintiffs are relegated to monetary damages by denial of injunctive relief, they will be prevented from having an office in the same building in which they live— not a minor consideration, in Manhattan." (*See id.*)

Although not addressing the requirements for equitable relief, another Appellate Division, First Department, opinion states

that "a proprietary lease is no different from any other type of lease" and "[c]o-operative apartment stock is . . . like any other stock in a corporation owning real estate." (*See Silverman v Alcoa Plaza Assoc.*, 37 AD2d 166, 172 [1st Dept 1971].) "It does not appear that the pairing of the two together does anything to create a new classification of real estate." (*Id.*)

It is clear that a contract for the purchase and sale of the ownership interest in a cooperative apartment is governed, as a contract for the sale of goods, by article 2 of the Uniform Commercial Code, including article 2's remedy provisions. (*See Friedman v Sommer*, 63 NY2d 788, 789-790 [1984] [applying UCC 2-205, "Firm Offers"]; *Weiss v Karch*, 62 NY2d 849, 850 [1984] [applying UCC 2-713, "Buyer's Damages for Non-Delivery or Repudiation"]; *Sangro Mgt. Corp. v Clinton Hills Apts. Owners Corp.*, 21 AD3d 545, 546 [2d Dept 2005] [applying UCC 2-725, "Statute of Limitations in Contracts for Sale"]; *Measom v Greenwich & Perry St. Hous. Corp.*, 227 AD2d 312, 312 [1st Dept 1996] [same]; *Spiegel v Kessler*, 216 AD2d 239, 241 [1st Dept 1995]; *Sabin-Goldberg v Horn*, 179 AD2d 462, 463 [1st Dept 1992] [applying UCC 2-713]; *Silverman v Alcoa Plaza Assoc.*, 37 AD2d at 172 [applying UCC 2-718, "Liquidation or Limitation of Damages; Deposits"].) But none of the decisions that address specific performance of a contract for the purchase and sale of a cooperative apartment makes mention of UCC 2-716, "Buyer's Right to Specific Performance or Replevin."

Section 2-716 (1) provides that "[s]pecific performance may be decreed where the goods are unique or in other proper circumstances." "The test of uniqueness under this section must be made in terms of the total situation which characterizes the contract." (UCC 2-716, Comment 2.) "[T]he use of the term 'unique goods' is not intended to revive the common-law tests of equity jurisdiction and is not the sole test for relief." (McKinney's Cons Laws of NY, Book 62½, NY Annotations to UCC 2-716, at 258.) "[U]niqueness is not the sole basis of the remedy under this section for the relief may also be granted 'in other proper circumstances' and inability to cover is strong evidence of 'other proper circumstances.' " (UCC 2-716, Comment 2.)

The reference to "cover" is to the remedy provided by section 2-712. "[T]he buyer may 'cover' by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." (UCC 2-712 [1].) "The buyer may recover from the seller as damages the difference between the cost of cover and

the contract price together with any incidental or consequential damages . . . , but less expenses saved in consequence of the seller's breach." (UCC 2-712 [2].) Referring to "the section on specific performance of contracts for 'unique' goods," the Comment states that "availability of the goods to the particular buyer for his particular needs is the test for that remedy." (*See* UCC 2-712, Comment 3.)

The intended meaning of "unique" and its relationship to "other proper circumstances" as requirements for specific performance under section 2-716 is not entirely clear. But a legislative policy to broaden the circumstances in which the remedy would be appropriate does seem clear, and, particularly with the reference to the cover remedy, the availability of substitute goods in the market—in other words, "uniqueness" in an economic sense—is central to the determination. The policy appears consistent with the "distinction between physical difference and economic interchangeability" (*see Van Wagner Adv. Corp. v S & M Enters.*, 67 NY2d at 192); and the availability of substitute goods as a central consideration is hardly a recent innovation (*see Butler v Wright*, 186 NY at 261-262).

The upshot of all this seems to be that a claim for specific performance of a contract for the purchase and sale of a cooperative apartment is not treated like real property for purposes of an assessment of the adequacy of a remedy at law or the existence of irreparable injury, but those assessments are tied to the operative market for cooperative apartments at the time and place of actual or threatened breach of the contract. The result is consistent with equity, the attempt to achieve fairness in the individual case.

One might question, therefore, the persistence of the special benefit given to real property, grounded in the culture and economics of more than a century ago, over the cooperative form of ownership, on which the real estate market in modern New York City depends. And what of the condominium unit, declared "for all purposes" to "constitute real property"? (*See* Real Property Law § 339-g; *see also Dime Sav. Bank of N.Y. v Pesce*, 93 NY2d 939, 941 [1999].) A claim for specific performance of a contract for the purchase and sale of a condominium apartment is deemed to involve real property (*see Sevilla v Valiotis*, 29 AD3d 775, 775-776 [2d Dept 2006]; *Naso v Haque*, 289 AD2d 309, 309-310 [2d Dept 2001]), but this court is unaware of any decision that expressly addresses the requirements for an equitable remedy. These are questions for another day, and, ultimately, a higher court.

Plaintiffs' verified complaint, or at least the incomplete copy included with the motion papers, contains no allegation as to the "uniqueness" of apartment F1 at 446 Kingston Avenue, or as to the inadequacy of a remedy at law or irreparable injury if specific performance is not ordered. The affidavit of Yachiel Michael Jaffe in support of motion (¶ 20), and the affidavit of Joseph Lezell in support of motion (¶ 20), each assert that "[t]he Property which is the subject matter of the contract of sale is unique, valuable and irreplaceable," but no other facts are alleged, and no other evidence offered, that would support an inference as to those conclusions and that suitable alternatives are not available in the market to allow cover or a reasonably certain determination of damages based upon the market price/contract price differential (*see* UCC 2-713 [1]; *Weiss v Karch*, 62 NY2d at 850).

The contract of sale does contain a provision that, in the event of seller's default, "Purchaser shall have such remedies as Purchaser is entitled to at law or in equity, including specific performance, because the Unit and possession thereof cannot be duplicated." (Contract of sale—cooperative apartment ¶ 13.2.) But, although not insignificant, the provision in itself is insufficient to establish entitlement to an equitable remedy (*see Seitzman v Hudson Riv. Assoc.*, 126 AD2d at 214).

Plaintiffs have, therefore, failed to demonstrate a likelihood of success on the merits of their cause of action for specific performance or irreparable injury if preliminary injunctive relief is not granted.

Plaintiffs' motion is denied in its entirety.